UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDIBLE ARRANGEMENTS INTERNATIONAL, LLC and EDIBLE ARRANGEMENTS, LLC, | : : : : | CIVIL ACTION NO. |
| Plaintiffs, | : : | |
| v. | : : | |
| 1-800-FLOWERS.COM, INC. and JUNE V. DELANEY and DAVID DELANEY d/b/a FRUIT BOUQUETS STATEN ISLAND, | : : : | NOVEMBER 20, 2014 |
| Defendants. | | |

**COMPLAINT**

Plaintiffs Edible Arrangements International, LLC and Edible Arrangements, LLC,

through their counsel, for their complaint against the defendants allege as follows:

**INTRODUCTION**

1.      This is an action for substantial damages and injunctive relief arising out of the

unlawful acts by a direct competitor of the Plaintiffs, 1-800-Flowers.com, Inc. ("18F"), and,

upon information and belief, at least one of its participants in its distribution network of

independent florists and/or franchisees or licensees (hereafter referred to as "Distributor" or

collectively as "Distributors") to compete unfairly with Plaintiffs and to usurp Plaintiffs'

goodwill and reputation in the marketplace by using and inducing others to use Plaintiffs'

federally registered and incontestable trademarks, and Plaintiffs' well-known and well-regarded

product design in promoting, marketing and selling 18F's competing line of products.

2.      Plaintiffs own and operate a phenomenally successful business specializing in the marketing and sale of fresh cut fruit designed to evoke floral arrangements (sometimes referred to as "Fruit Arrangements") and fruit coated with chocolate and other toppings (otherwise known and referred to as "Dipped Fruit" products).   These products are known generally as EDIBLE ARRANGEMENTS.  Plaintiffs' business has grown from a startup in the late 1990s to the most well recognized and most successful franchisor of fruit retail services in the United States.

3.      Plaintiffs have created a unique selling image and brand identity for their famous goods and services built upon their trademarks, service marks, and trade dress that identify Plaintiffs as the source of high quality, beautifully designed fresh fruit gift products. These brand identifiers include families of marks based upon the terms "Edible" and "Bouquet," as well as other marks and trade dress comprised of Plaintiffs' iconic six petal daisy with melon ball center.  These brand identifiers, both singly and collectively, have become indelibly associated with Plaintiffs in the public mind and marketplace through the Plaintiffs' substantial effort and expense..

4.      In 2011, 18F, a floral and gift retailer, embarked on a steadily escalating campaign to compete unfairly with Plaintiffs in the  Fruit Arrangement and Dipped Fruit markets by copying and infringing and inducing others to copy and infringe multiple aspects of Plaintiffs' valuable intellectual property.

5.      18F markets its competitive fruit products by repeatedly displaying and referencing Plaintiffs' most notable trademarks and trade dress in its promotional materials, websites and products.  18F's marketing materials, littered with countless gratuitous references

- 2 -

to Plaintiffs' marks and product design, reflect a studied attempt to misappropriate the goodwill and reputation Plaintiffs have spent so much time, money and effort cultivating.

6.      Not content to exploit Edible Arrangements' valuable goodwill on its own, 18F has also induced and caused its distribution network of independent florists and/or franchisees and/or licensees and others to use and infringe Plaintiffs' valuable intellectual property in promoting and selling 18F's competing product line.

7.      Moreover, both 18F and its Distributor embed Plaintiffs' marks in the hidden code for their websites and 18F uses Plaintiffs' marks in keyword advertising to channel Plaintiffs' customers to the defendants' websites.

8.      The net effect of this unlawful conduct is to create a likelihood of confusion and deception about whether 18F and its network of Distributors either are a part of Plaintiffs' business or are otherwise affiliated with or authorized by Plaintiffs.  Indeed, as a result of 18F's unlawful conduct, documented instances of actual confusion have already occurred.

9.      There is no legitimate reason for 18F or those selling and promoting its products to utilize the Plaintiffs' trademarks and product design in promoting 18F's competing product line and that use has caused and continues to cause substantial harm and damage to Plaintiffs and their valuable intellectual property rights.

10.      Accordingly, Plaintiffs bring this action for trademark infringement pursuant to 15 U.S.C. § 1114, false designation of origin and false advertising pursuant to 15 U.S.C. § 1125(a), trademark dilution pursuant to 15 U.S.C. § 1125(c), contributory trademark infringement, common law unfair competition and unfair and deceptive trade practices pursuant to Conn. Gen. Stat. §§ 42-110a et seq., to halt the unlawful conduct of 18F and its

- 3 -

Distributor, preserve Plaintiffs' hard-won reputation and goodwill, protect their valuable

intellectual property from the irreparable harm and the likelihood of confusion caused by the

Defendants' acts and recover Plaintiffs' related damages.

## THE PARTIES

11.     Plaintiff Edible Arrangements International, LLC ("Edible Arrangements

International") is a Delaware limited liability company with a principal place of business at 95

Barnes Road, Wallingford, Connecticut 06492.

12.     Plaintiff Edible Arrangements, LLC ("Edible Arrangements, LLC") is a

Connecticut limited liability company with a principal place of business at 95 Barnes Road,

Wallingford, Connecticut 06492.  Edible Arrangements International and Edible

Arrangements, LLC are hereinafter collectively referred to as "Plaintiffs" or "Edible

Arrangements."

13.     Defendant 1-800-Flowers.com, Inc. ("18F") is a Delaware corporation with a

principal place of business at 1 Old Country Road, Suite 500, Carle Place, New York 11514.

14.     Defendants June V. Delaney and David Delaney, d/b/a Fruit Bouquets Staten

Island ("Fruit Bouquets Staten Island" or "Distributor") are individuals residing in Staten

Island, New York with a principal place of business at 53 Page Avenue, Staten Island, New

York 10309.  18F and Fruit Bouquets Staten Island are hereinafter collectively referred to as

"Defendants."

## JURISDICTION AND VENUE

15.     Counts One, Two and Three of this action arise under the trademark laws of the

United States, 15 U.S.C. §§ 1114(1)(a), 1125(a)(1) and 1125(c).

- 4 -

16.     Counts Four and Five of this action arise under the common law, are joined with substantial and related claims arising out of the trademark laws of the United States and are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

17.     Count Six of this action arises under state law, Conn. Gen. Stat. §42-110a et seq., is joined with substantial and related claims arising under the trademark laws of the United States and is so related to the claims within the original jurisdiction of this Court that it forms part of the same case or controversy under Article III of the United States Constitution.

18.     Subject matter jurisdiction is conferred upon this Court pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338, 1367 and the doctrine of supplemental jurisdiction.

19.     This Court has personal jurisdiction over 18F by virtue of its knowing and intentional infringement of Plaintiffs' trademark rights and its substantial and continuing contacts with the State of Connecticut as evidenced by, among other things, the following:



20.     This Court has personal jurisdiction over Fruit Bouquets Staten Island by virtue of its knowing and intentional infringement of the trademark rights of the Plaintiffs, both of which are domiciled in Connecticut.

21.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c), because Defendants are subject to personal jurisdiction in this District, 18F has transacted substantial and continuing business in this District, because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the intentional infringement by Defendants of Plaintiffs' valuable trademark rights, and because a substantial part of property that is the subject of this action is situated in this District.

## GROWTH OF EDIBLE ARRANGEMENTS' BRAND AND BUSINESS

22.     Edible Arrangements International is the leading franchisor in the fruit gifting industry, best known for its artistically designed fresh Fruit Arrangements evocative of floral designs and Dipped Fruit products.  These highly regarded products are available through an extensive network of franchises throughout the United States and abroad, and through its websites, call center, on the Internet and a handful of company-owned stores.

23.     Edible Arrangements, LLC is the owner and licensor of, among other things, the various trademarks, trade dress, domain names, copyrights and other intellectual property used and associated with the famous EDIBLE ARRANGEMENTS business and brand, as set forth in greater detail below.  Edible Arrangements, LLC licenses these assets to Edible Arrangements International for use and sublicensing through Edible Arrangements International's franchise system, websites and third party Internet retailers.

3787983v2

24.     Edible Arrangements is a remarkable American success story, born out of the entrepreneurial spirit of its founder and owner, Tariq Farid. Mr. Farid purchased his first flower shop in East Haven, Connecticut at the age of 16, and within several years had grown his business to four locations.

25.     Drawing upon his experience and success as a florist, Mr. Farid developed a unique marketing program of fresh cut fruit baskets bearing designs inspired by floral arrangements.  His vision then, and continuing today, was to create and offer his customers the highest quality cut fruit in a format reminiscent of floral designs.

26.     In 1999, Mr. Farid opened the first EDIBLE ARRANGEMENTS store, through which he introduced his unique cut fruit arrangements sculpted to look like flowers and floral designs.

27.     Prompted by inquiries from those interested in his novel business and creative branding, Mr. Farid began franchising his business in 2001, with the opening of the first-ever EDIBLE ARRANGEMENTS franchise in Waltham, Massachusetts.

28.     From then on, the EDIBLE ARRANGEMENTS brand and business experienced rapid growth and expansion.  By 2004, just three years after the launch of the first franchise, Edible Arrangements was recognized as among the top 500 franchises in the United States by Entrepreneur Magazine.

29.     By 2006, the 500th franchise opened in Chicago, and by 2011, that number reached 1000. Today, there are over 1214 EDIBLE ARRANGEMENTS stores in at least 12 countries around the world, with more than 1100 located throughout the United States.

3787983v2

30.     Beyond this growing  franchise system, Edible Arrangements also markets its goods and services through a number of additional trade channels, including its popular www.ediblearrangements.com  and www.edible.com  websites (the "Edible Arrangements Websites"), the company's toll-free call center (1-877-DOFRUIT), a handful of company-owned stores, EDIBLE TO GO mall outlet locations, < dippedfruit.com > , < hospitalgiftshop.com > , and Amazon marketplace.

31.     In addition to Edible Arrangements' signature fresh  Fruit Arrangements, the product line has expanded to include Dipped Fruit, fruit salads, fruit sundaes, beverages, and various "grab and go" products.  The marquis product line remains, of course, the now-famous fruit products sculpted in a fashion reminiscent of floral designs.

32.     As chronicled by the business media, Edible Arrangements has climbed to the upper echelon of franchisors in the United States.  For example, Edible Arrangements ranked ninth on the Forbes 2011 list of top "franchises to start"; was named one of the "Top 100 Internet Retailers" by Internet Retailer magazine; was 40th on Entrepreneur Magazine's 2013 Entrepreneur Franchise 500; and was ranked 3rd on Inc. magazine's list of top food & beverage companies.  Most recently, the Franchise Times has ranked Edible Arrangements No. 128 in its list of the "Top 200 Franchises."

33.     Today, Edible Arrangements enjoys system wide gross sales of its branded products and services in excess of half a billion dollars annually. Edible Arrangements anticipates that this number will continue to increase.

34.     Edible Arrangements' spectacular success is a direct result of its commitment to providing a consistent high quality, beautifully designed product that is instantly recognizable by consumers as a fresh Fruit Arrangement made by Edible Arrangements.

35.     As a result, customers have come to associate Edible Arrangements and its valuable trade and service marks as synonymous with high quality and freshness.  In fact, common public response to "Edible Arrangements" is "I love Edible Arrangements!"

36.     Any consumer misperception or confusion as to the source of an Edible Arrangements product with Defendants' products will irreparably damage Edible Arrangements' valuable brand and goodwill.

### EDIBLE ARRANGEMENTS' VALUABLE INTELLECTUAL PROPERTY

37.     The Edible Arrangements business is predicated on the high quality of its goods and services and the well-known trademarks and trade dress that designate those goods and services.

38.     By marketing and promoting these various brand identifiers aggressively in connection with its hugely popular products and services, Edible Arrangements has created a stable of extremely well-known marks and iconic trade dress that the public uses to identify and distinguish Edible Arrangements' goods in the marketplace.

**The Famous and Incontestable EDIBLE Marks**

39.     At the core of the Edible Arrangements brand is a family of trademarks and service marks comprising or containing the terms EDIBLE or EDIBLE ARRANGEMENTS, either alone or with other words and/or designs (collectively, the "EDIBLE Marks").  Edible

Arrangements has been using the EDIBLE Marks since at least as early as October 31, 1998

and the EDIBLE Marks and variations thereof have been registered with the United States

Patent and Trademark Office, including, without limitation, those listed on Exhibit A hereto.

40.     Primary among these EDIBLE Marks is the famous trade name, trademark and

service mark EDIBLE ARRANGEMENTS (the "EDIBLE ARRANGEMENTS Mark").

41.     The EDIBLE ARRANGEMENTS Mark, Reg. No. 2,934,715, is incontestable

pursuant to the provisions of the Federal Trademark Act of 1946, as amended, 15 U.S.C.

§ 1051, et seq. (the "Lanham Act"), as is the EDIBLE ARRANGEMENTS Mark and Logo,

Reg. No. 3,141,566, appearing below:



42.     The EDIBLE Marks, including EDIBLE ARRANGEMENTS and the EDIBLE

ARRANGEMENTS Mark and Logo, are broadly recognized by the general consuming public

as identifying Edible Arrangements and its products and services.  Indeed, the EDIBLE

ARRANGEMENTS Mark and Logo, which plays upon the creative application of floral designs

to fruit products, saturates the customer and trade experience.

43.     For example, the EDIBLE ARRANGEMENTS Mark  is used as the name of

every Edible Arrangements store and franchise.  Each such store features signage and various

in-store and point-of-purchase displays of the EDIBLE ARRANGEMENTS Mark and the

EDIBLE ARRANGEMENTS Mark and Logo, including on coolers, counters and other decor.

Franchisees at the stores wear clothing that displays the EDIBLE Marks to reinforce consumer perception that all the goods and services through the stores emanate from Edible Arrangements.

44.    Additionally, the Edible Arrangements products sold and delivered to many millions of consumers annually all bear the EDIBLE Marks on packaging, boxes and other associated containers and sales documents, such as invoices and delivery notices.

45.    Likewise, the familiar refrigerated delivery vehicles that deliver these products to consumers proudly display the EDIBLE ARRANGEMENTS Mark and the EDIBLE ARRANGEMENTS Mark and Logo prominently along their sides.

46.    The EDIBLE ARRANGEMENTS Mark and EDIBLE ARRANGEMENTS Mark and Logo appear prominently at the top of every page of the Edible Arrangements Websites, through which countless consumers shop for and purchase products branded with the EDIBLE Marks.

47.    Edible Arrangements' marketing materials, brochures, catalogs, coupons and sell sheets all likewise feature the EDIBLE Marks as a designation of source.  Edible Arrangements advertises across all important media — television, radio,  print, internet, digital, e-commerce, and through social media, for example — and invariably emphasizes the EDIBLE ARRANGEMENTS Mark in those advertisements.

48.    Edible Arrangements franchisees also use promotional merchandise, such as jackets, shirts, t-shirts, hats and store signage that further display and promote the EDIBLE ARRANGEMENTS Mark and EDIBLE ARRANGEMENTS Mark and Logo.

- 11 -

49.     The effect of this comprehensive promotion of EDIBLE ARRANGEMENTS Mark and EDIBLE ARRANGEMENTS Mark and Logo is that consumers who interact with the brand in any way — as purchasers, shoppers or even viewers of advertising or refrigerated delivery vehicles — are constantly reminded that the EDIBLE ARRANGEMENTS Mark and EDIBLE ARRANGEMENTS Mark and Logo designate the source of the Edible Arrangements fruit products that circulate regularly through United States commerce.

50.     The EDIBLE ARRANGEMENTS Mark is famous, as it is widely recognized by the general consuming public of the United States as a designation of source of the goods and services of Edible Arrangements, and it became famous well before 18F's unlawful activities complained of herein.

51.     Edible Arrangements also uses and promotes many different variations of the EDIBLE Marks to enhance the association between the EDIBLE Marks, the goods and services they identify, and Edible Arrangements as the source of those goods and services.

52.     For example, Edible Arrangements has used EDIBLE, EDIBLE POPS, and LITTLE EXPRESSIONS BY EDIBLE ARRANGEMENTS for various fruit products; EDIBLE TO GO for retail services; GET FRESH WITH EDIBLE ARRANGEMENTS! for retail, business management, consulting, and franchise services; EDIBLE BRANDS for business management and consulting services; EDIBLE CARES for charitable services; and EDIBLE ARRANGEMENTS ARRANGEMENT FOAM for foam supports for fresh cut fruit arrangements.

- 12 -

53.     Edible Arrangements also uses and plans to use other variations of the EDIBLE Marks in connection with various additional product promotions, tag lines, slogans and recently launched a customer rewards program called EDIBLE REWARDS.

54.     The EDIBLE ARRANGEMENTS and other EDIBLE Marks are inherently distinctive.  They imaginatively combine the normally disparate notions of flower arrangements, which are displayed for their visual appeal and not eaten, and cut fruit, typically served as food.

55.     By virtue of this extensive usage in connection with so many highly regarded products and services, the EDIBLE Marks have become widely known to the general consuming public of the United States, have acquired significant secondary meaning, and represent goodwill of enormous value to Edible Arrangements.

56.     Beyond the EDIBLE Marks, Edible Arrangements also promotes and uses a series of additional marks to designate its popular fruit products and related goods and services.

**The Distinctive and Well-Known BOUQUET Family of Marks**

57.     Since at least as early as 1999, Edible Arrangements has used marks comprising or containing the term BOUQUET, typically preceded by one or more words, to designate variations of its fresh cut fruit designs (the "BOUQUET Marks").

58.     Edible Arrangements first began using the designations BERRY BOUQUET and BERRY CHOCOLATE BOUQUET in 1999, followed by BERRY TREE BOUQUET in 2001, for various fresh-cut fruit products.

- 13 -

59.     Since that time, Edible Arrangements has expanded this family of marks to embrace numerous additional variations, including without limitation, A BIRTHDAY BOUQUET, AMBITION BOUQUET, AUTUMN SWIZZLE BOUQUET, BATTY BOUQUET, BERRY CANADIAN BOUQUET, BLACK CAT BOUQUET, BOOTASTIC BOUQUET, BREAST CANCER AWARENESS BOUQUET, CHOCOLATE BANANA BOUQUET, CHEER ME UP BOUQUET, DIPPED FRUIT BOUQUET, EXTRA EFFORT BOUQUET, FIRST MOMENTS BOUQUET, FRUITFUL ACHIEVEMENT BOUQUET, FRUIT TRUFFLES BOUQUET, HOLIDAY BOUQUET, HONEY BEAR BOUQUET, JOB WELL DONE BOUQUET, JOYOUS BOUQUET, JUST BECAUSE BOUQUET, MERRY GINGERBREAD MEN BOUQUET, MORNING MOTIVATOR BOUQUET, O'CANADA BOUQUET, PATRIOTIC APPRECIATION BOUQUET, PEANUT BUTTER BOUQUET, PEANUT BUTTER CHOCOLATE BOUQUET, PEARADISE BOUQUET, PRECIOUS ARRIVAL BOUQUET, REINDEER SLEIGH RIDE BOUQUET, ROCK A BYE BOUQUET, SWEET ANNIVERSARY BOUQUET, SWEET LIBERTY BOUQUET, SWEETHEART BOUQUET, SWEETHEART SWIZZLE BOUQUET, THE ACCOMPLISHMENT BOUQUET, THE RECOGNITION BOUQUET, TRIPLE PLAY BOUQUET, VALENTINE'S SWEETIE BOUQUET, WATERMELON KIWI SUMMER BOUQUET, WELCOME ABOARD BOUQUET and YOU'RE THE BEST BOUQUET (collectively with BERRY BOUQUET, BERRY CHOCOLATE BOUQUET and BERRY TREE BOUQUET, the "BOUQUET Marks").

60. The BOUQUET Marks are inherently distinctive, imaginatively combining notions of its fresh cut fruit arrangements with the term "bouquet," which previously was associated exclusively with flowers.

61. Edible Arrangements advertises and promotes its BOUQUET family of marks in such a way that the consuming public has come to associate the term BOUQUET when used in connection with cut fruit arrangements with Edible Arrangements.

62. For example, Edible Arrangements has offered and promoted and intends to continue to offer and promote its "Bouquet of the Month" club where consumers choose from either Dipped Fruit boxes (the Dipped Daisy Club) or regular Fruit Arrangements (the Daisy Club) for a 3 month membership or a 12 month membership.

63. Because Edible Arrangements uses and promotes the BOUQUET Marks extensively through its various trade channels, and because the products they designate are so popular and widely purchased and promoted among consumers, the BOUQUET Marks have become widely known to the general consuming public of the United States, have acquired significant secondary meaning, and represent goodwill of enormous value to Edible Arrangements.

64. Edible Arrangements, LLC owns numerous United States federal trademark registrations for the BOUQUET Marks, including without limitation those listed on Exhibit B hereto. Registration Nos. 3,429,717 and 3,429,718 -- for the BERRY BOUQUET and BERRY TREE BOUQUET marks -- are incontestable.

**The Distinctive and Valuable DO FRUIT Marks**

65.     Since as early as 2006, Edible Arrangements has also used marks comprising or containing the terms DO FRUIT in connection with several of its goods and services (the "DO FRUIT Marks").  Edible Arrangements uses and promotes different variations of its DO FRUIT Marks, including I DO FRUIT and WE DO FRUIT.

66.     Edible Arrangements uses the DO FRUIT Marks both in connection with its fruit products and as a designation for its online and retail services relating to fruit. Among other things, the DO FRUIT Mark appears in Edible Arrangements' 1-877-DOFRUIT order number and is displayed on the sides of franchisee refrigerated delivery vehicles and on the Edible Arrangements Websites.  Each of the  email addresses of the over 1100 North American franchisees incorporate the DO FRUIT Marks.

67.     The DO FRUIT Marks are inherently distinctive. Moreover, because Edible Arrangements uses and promotes the DO FRUIT Marks, and because the products and services they designate are popular among consumers, the DO FRUIT Marks have become well-known, have acquired significant secondary meaning, and represent goodwill of great value to Edible Arrangements.

68.     Edible Arrangements, LLC owns three United States federal trademark registrations for the DO FRUIT Marks, including without limitation those listed on Exhibit C hereto. Registration No. 3,198,965 -- for the mark DO FRUIT -- is incontestable.

**Edible Arrangements' Iconic Six Petal Daisy Design**

69.     The Edible Arrangements six petal daisy with melon ball design ("Six Petal Daisy Design") is an integral part of the brand identity that has made Edible Arrangements so successful.

70.     That design, an example of which appears below, has become synonymous with Edible Arrangements and its fresh Fruit Arrangements.



71.     The Six Petal Daisy Design has been included in numerous different Fruit Arrangements offered by Edible Arrangements through its franchise system and website.  Tens of millions of cut fruit arrangements featuring the Six Petal Daisy Design have been distributed under the EDIBLE ARRANGEMENTS Mark by Edible Arrangements, either directly or through its Franchise system since its introduction in 1999.

72.     The Six Petal Daisy Design is also a featured product in Edible Arrangements EDIBLE POP product line ("Daisy Pop"), introduced in January 2014.  Since the introduction of the Daisy Pop, Edible Arrangements has sold over 10,000 Daisy Pops through its "in-store"

only merchandising.  An example of how the  Daisy Pop is promoted is shown below:



73.     Edible Arrangements' various advertisements and promotional materials, including brochures and window clings, website banners, television commercials, email blasts, promotion on social media platforms, and refrigerated delivery vehicle signage, prominently feature the Edible Arrangements Six Petal Daisy Design, because it is such a strong identifier for the brand.

74.     Likewise, the Edible Arrangements Website has consistently and prominently displayed the Six Petal Daisy Design since at least as early as early as 2001 and has displayed and continues to display countless images of products bearing the Edible Arrangements Six Petal Daisy Design.

75.     Indeed, the primary logo used for the EDIBLE Marks features an abstracted drawing and design modeled on the Edible Arrangements Six Petal Daisy Design:



This logo reference to the Edible Arrangements Six Petal Daisy Design reinforces the association between the product arrangements and the EDIBLE Marks and brand generally.

76.     The Six Petal Daisy Design has become so closely associated with Edible Arrangements and its signature line of products sold under the EDIBLE, BOUQUET and DO FRUIT Marks, Edible Arrangements has registered the mark "6 PETAL APPROACH" in connection with business and franchise management services.

77.     Because the Six Petal Daisy Design has become so closely associated with Edible Arrangements and its products, that design is Edible Arrangements' protectable trade dress and Edible Arrangements has applied to register its trade dress with the United States Patent and Trademark Office, Serial No. 86388189.

78.     The Edible Arrangements Six Petal Daisy Design is distinctive and non-functional.  Moreover, the Edible Arrangements Six Petal Daisy Design is vested with enormous secondary meaning and goodwill.  It serves to identify Edible Arrangements and its goods and services and distinguish them in the marketplace.

79.     Edible Arrangements owns incontestable United States Federal Registration No. 3,343,733 covering one iteration of the Edible Arrangements  Fruit Arrangement featuring the Six Petal Daisy Design, depicted by the following drawing:



While this registration covers only one iteration of the Edible Arrangements products, the Six Petal Daisy Design feature is a key element.

80.     Additional Examples of Edible Arrangements' products depicting the well-known Six Petal Daisy Design follow:



81.     The EDIBLE, BOUQUET and DO FRUIT Marks are hereinafter collectively referred to as the "EA Marks."  Individually and collectively, the EA Marks and the Six Petal Daisy Design have become critical brand identifiers for Edible Arrangements and signify to the consuming public the source of Edible Arrangements' highly esteemed and high quality products and services.

<div style="text-align:center">

**EDIBLE ARRANGEMENTS HAS**
**EXTENSIVELY ADVERTISED AND PROMOTED THE EA MARKS**

</div>

82.     Edible Arrangements has expended extraordinary amounts of time, effort and money in designing, creating, developing and promoting the Edible Arrangements brand.  With respect to its intellectual property, specifically, Edible Arrangements has invested countless hours and many millions of dollars in developing, cultivating and promoting the EA Marks, which are among the most important and valuable business assets of the company.

- 20 -

83.     In the past five years alone Edible Arrangements has spent in excess of $135,000,000.00 in advertising the EA Marks.

84.     Edible Arrangements has continuously and consistently promoted the EA Marks, including the EDIBLE Marks, the BOUQUET Marks, the DO FRUIT Marks and the Six Petal Daisy Design on its website since at least as early as 2001.

85.     In addition, and beyond the many commercial uses noted above, Edible Arrangements aggressively advertises and promotes the EA Marks through print, television, radio, on-line, digital media, and promotion through social media platforms.  These advertisements and promotions regularly feature the EDIBLE Marks, the BOUQUET Marks and one or more of the other EA Marks.

86.     Through the years, Edible Arrangements has embarked on many national media campaigns through print, online media, social media and television advertising.

87.     Just during May of 2014 alone, Edible Arrangements' television commercials aired hundreds of times on the most popular TV channels, including A&E, Bravo, CMT, Cooking Channel, DIY, E!, ESPN, Food Network, Hallmark, Hallmark Movie Channel, HGTV, HMC, Lifetime, Lifetime Movie Network, NBC, OWN, Oxygen, TBS, TNT, TV Land, USA and WGN!.

88.     These commercials ran during many popular shows, including Celebrity Wife Swap, Duck Dynasty, The Ellen DeGeneres Show, Grey's Anatomy, Keeping Up With The Kardashians, Preacher's Daughter, The Real Housewives of Orange County, The Today Show, True Tori, The Voice, and Watch What Happens Live.

89.     Edible Arrangements' TV commercials also aired during a number of the 2014 NBA Playoff and Conference Finals games, and Edible Arrangements has been announced as the sponsor of certain games.

90.     Edible Arrangements also advertises its goods and services on popular radio stations including ESPN, CBS, iHeartRadio and Clear Channel stations like Z100 (Hit Music), Q104.3 (Classic Rock), 106.7 (LiteFM).  Edible Arrangements' radio advertisements have aired on these stations during the Spring of 2014, as well as many times before.

91.     During 2013 alone, the Edible Arrangements Website, which features every aspect of the EA Marks, had 34,431,620 visits to the site with over 3,936,299 transactions; averaging during this period 92,807 daily visits with approximately 10,600 orders daily during this same period.

92.     Edible Arrangements also advertises and promotes its products and services in connection with the EA Marks via social media, including on Twitter, FaceBook, YouTube and Pinterest.

93.     For example, Edible Arrangements has a page on Pinterest that is followed by over 3,700 Pinterest users (www.pinterest.com/dofruit/); Edible Arrangements' Facebook page has well over 770,000 "likes" (www.facebook.com/ediblearrangements); Edible Arrangements' YouTube channel has hundreds of subscribers and its videos have had over 350,000 "views" (www.youtube.com/ediblearrangements); and Edible Arrangements' Twitter page is followed by almost 30,000 Twitter users (https://twitter.com/edible).  Edible Arrangements promotes its EA Marks in connection with its products on each of these social media sites.

3787983v2

94.    Edible Arrangements also garners extensive publicity and positive reviews in print and other media.  Magazines and newspapers ranging from Entrepreneur, Forbes, and Inc. to The New York Times and The Wall Street Journal have featured stories on Edible Arrangements, its products and services, and its famous brands.  As noted above, many of these magazines have ranked Edible Arrangements in the upper tiers of franchise and food industry businesses.

95.    Edible Arrangements has also been featured on nationally syndicated shows such as The Oprah Winfrey Show, The Doctors', The Today Show, Rachel Ray, The Food Network, The Tony Danza Show, MSNBC's Your Business and CNBC's programs The Big Idea, On the Money and The Call, among others, and has had product placement in "hit" series such as Glee.

96.    Edible Arrangements has also over the years partnered with numerous other famous brands to promote its products and its EA Marks, such as Disney, Harley Davidson, NASCAR and Viacom, International.  For example, Edible Arrangements markets and sells its "Spongebob Bikini Bottom Bouquet" combining its well-known BOUQUET mark with the famous character owned by Viacom International, Inc.  With Disney, Edible Arrangements has partnered to market and sell, for example, its "Mickey Mouse Clubhouse Bouquet" and its "Disney Princess Enchanted Bouquet."

97.    As a result of the long and continuous use, promotion and advertisement of the Edible Arrangements business and the EA Marks, as well as the extensive coverage in the media, the EA Marks have developed widespread consumer recognition.  The EA Marks have

become icons of modern commerce and function as unique source identifiers for Edible Arrangements.

## 18F'S UNLAWFUL CONDUCT

98.     Defendant 18F is a floral and gift retailer, best known as a delivery service for flowers and related gifts.

99.     Upon information and belief, 18F directly and through a distribution network of independent florists and franchisees/licensees promotes and distributes its products.

100.     Upon information and belief, in late 2011 18F decided to enter into the market for cut fruit arrangements and, at that time, first launched its www.fruitbouquets.com website (the "Infringing Website"), offering some initial fruit products that 18F associated with floral arrangements and fruit coated with chocolate and other toppings.

101.     18F has continued and expanded its cut fruit arrangement product line under the "Fruit Bouquets" brand, selling and promoting such products directly on the Infringing Website and through its distribution network of independent florists and franchisees/licensees.

102.     In doing so, 18F embarked on a campaign to intentionally imitate and infringe the EA Marks and confuse consumers into believing that 18F and its goods and network of Distributors are somehow associated with or approved by Edible Arrangements, which campaign has escalated and continues to steadily escalate.

103.     In particular, when it entered the cut fruit arrangement market in late 2011, 18F chose a domain and brand name - "Fruit Bouquets" - that incorporated Edible Arrangements' well-known and distinctive BOUQUET Marks.

- 24 -

104.    Since that time, Edible Arrangements and 18F have been involved in multiple adverse proceedings in the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, primarily over the BOUQUET Marks (the "TTAB Proceedings").

105.    Edible Arrangements, LLC originally filed oppositions against six applications filed by 18F to register marks comprising or containing FRUIT BOUQUETS.  18F responded by filing  a number of TTAB Proceedings.  Currently there are 33 pending opposition and cancellation actions filed by 18F against various Edible Arrangements BOUQUET Marks.

106.    More recently, 18F has filed a proceeding to cancel Edible Arrangements, LLC's registration for EDIBLE.

107.    In addition, upon information and belief, beginning during the Fall of 2013 and increasing regularly since that time, 18F has been steadily tracking Edible Arrangements' branding and trademark uses and incorporating more and more of the EA Marks and other intellectual property into its own infringing advertising, products, and marketing.

108.    In an interview published in the October 2013 Leaders Magazine, 18F's CEO described the company's "new Fruit Bouquets line" and announced, "With our Fruit Bouquets brand, we are targeting Edible Arrangements, which has a built a $500-million-dollar category without a number two competitor. We aim to change that … We believe that we can take a significant share of the business that is already there …."  In other interviews, the same CEO stated his intention to penetrate the cut fruit market in an aggressive way in 2014.

109.    18F has chosen to "target" Edible Arrangements not by developing its own brand identity, but rather by competing unfairly and infringing the EA Marks. As a result, 18F is causing an aggravated likelihood of confusion and in fact actual confusion among consumers.

**18F Is Using The EA Marks In Its Keyword Advertising And Metadata**

110.    18F has created confusion among consumers by, upon information and belief, improperly using Edible Arrangements' EDIBLE ARRANGEMENTS Mark in its keyword advertising with every major search engine on the Internet.

111.    When a consumer inputs the EDIBLE ARRANGEMENTS Mark as a search term on Google, Yahoo! and Bing, it becomes immediately apparent that 18F is using that Mark as a keyword.

112.    As shown in the following images, when a consumer inputs the EDIBLE ARRANGEMENTS Mark into Google, Yahoo! or Bing, the search results include--as the second entry--a paid advertisement for 18F's Infringing Website.





This is a blatant attempt by 18F to drive Edible Arrangements' customers to its Infringing Website.

113.    Moreover, once a consumer looking for Edible Arrangements has been lured to 18F's Infringing Website, that consumer cannot be anything other than confused by 18F's infringing conduct.  That infringement is obvious with a review of the Infringing Website, which makes repeated reference to the EA Marks both in its hidden code and rampantly throughout the express content of the Site.

114.    For example, when consumers first visit the Infringing Website's homepage, either by typing in the internet address or searching via Google, they are greeted with a page title of "Edible Fruit Arrangements" positioned on a tab immediately above the domain name:



(emphasis added).   "Edible Fruit Arrangements" is, of course, a blatant reference to the EDIBLE ARRANGEMENTS Mark and, with only the descriptive word "fruit" inserted between the Mark's two words is confusingly similar to EDIBLE ARRANGEMENTS.

115.    Moreover, 18F juxtaposes that infringing title with various references to "bouquets," thus invoking Edible Arrangements BOUQUET Marks and exploiting the likelihood that consumers will perceive the parties to be the same or somehow connected or affiliated.

116.    Upon information and belief, 18F deliberately programmed the code for the home page of the Infringing Website to display "Edible Fruit Arrangements" as the title of the page in the browser tab, as illustrated by the following code associated with the homepage:

&lt;title&gt;**Edible Fruit Arrangements** | Chocolate Strawberries | Fruit Bouquets(SM)&lt;/title&gt;

(emphasis added).

117.    The metadata for the Infringing Website contains two similar, gratuitous uses of the EDIBLE ARRANGEMENTS Mark, as depicted in the following code associated with the homepage:

3787983v2

&lt;meta name="description" content="Send a delicious treat with Fruit Bouquet(SM)! Each **edible arrangement** features a variety of fresh flower shaped fruit, chocolate covered strawberries &amp; more!"/&gt;

&lt;a href="/how-to-create-a-fruit-bouguet?cm_sp=fruitbouguets-_-homepage-_-freshtalk-article-howtocreatefruit" name="FB_CONTENT2"&gt;How to Create an **Edible Fruit Arrangement** &gt;&lt;/a&gt;&lt;br&gt;

(emphasis added).  Notably, the first reference above does not actually appear on the homepage itself.

118.    Indeed, even the post-domain path of the URL of numerous pages of the Infringing Website betray the deliberate embedding of the EDIBLE ARRANGEMENTS Mark in organizational code, as depicted in the following:



(emphasis added).

119.    Upon information and belief, 18F inserted these references to the EDIBLE ARRANGEMENTS Mark as a title and in the code for the Infringing Website to manipulate search engine search results and direct web customers searching for the real Edible Arrangements to the Infringing Website and 18F's own products and services.

**18F Is Using The EA Marks On The Infringing Website**

120.    More transparently, the Infringing Website is rife with numerous express uses of the EA Marks.

121.    18F is using the EDIBLE ARRANGEMENTS Mark or designations that are confusingly similar to that Mark in product descriptions, advertising copy, and other uses in connection with and for purposes of promoting sale of 18F's products.

122.    For example, the Infringing Website's homepage and several other pages throughout the site feature the following invitation to "Create an Edible Fruit Arrangement":



(emphasis added).  Notably, clicking on this link leads to a page that makes no reference to an "Edible Fruit Arrangement," (as shown below) so the use of this confusingly similar designation on the home page functions to mislead consumers into believing that they are accessing genuine

Edible Arrangements content and to unfairly manipulate organic search engine results.



123.    There is no reason for 18F to describe its fruit products -- which are self-evidently products for consumption -- as "edible" other than to associate 18F with Edible Arrangements and its famous trademarks.  These intentional references not only betray 18F's unlawful scheme to misappropriate the goodwill inherent in the EDIBLE ARRANGEMENTS Mark but also serve to mislead consumers about the source of 18F's products.   They furthermore assure that internet search engines like Google will direct web shoppers seeking "Edible Arrangements" to 18F's Infringing Website.

124.    Numerous other pages of the Infringing Website make repeated improper uses of the EDIBLE ARRANGEMENTS Mark both to generate visits from would-be Edible Arrangements Internet shoppers and confuse consumers into believing that they are viewing an

3787983v2

authorized Edible Arrangements product.   Representative examples of these infringing uses

include:



(emphasis added).

125.  18F has also mimicked Edible Arrangements' family of BOUQUET Marks,

choosing deliberately to identify particular fruit arrangements with the term Bouquet to

maximize the false impression that 18F is in some way connected to Edible Arrangements, as

illustrated by the following:



(emphasis added).

126.     These uses mimic the format and context of Edible Arrangements' BOUQUET Marks by proceeding the term "Bouquet" with other terms and using these designations as product trademarks for particular cut fruit baskets.

127.     Particularly given all the other uses of the EA Marks, shoppers on the Infringing Website will naturally assume that 18F's "Bouquet" products, such as its "Make Their Day Bouquet" and "Your Best Smile Bouquet," are part of the same line of products Edible Arrangements designates under its BOUQUET family, such as CHEER ME UP BOUQUET, EXTRA EFFORT BOUQUET, JOB WELL DONE BOUQUET, WELCOME ABOARD BOUQUET and YOU'RE THE BEST BOUQUET.

128.     More subtly but no less insidiously, other pages of the Infringing Site feature variations of the EDIBLE Marks to enhance the false impression that 18F's products derive from or are part of the Edible Arrangements line of fruit items, as illustrated by the following:





(emphasis added). "Edible bouquets," as displayed above, is a conflation of two of the most important of the EA Marks.

129.   Further, 18F uses the term "Edible Bouquets" on pages of the site that do not sell their "bouquet" products.



130.   This "bait and switch" tactic is particularly damaging to Edible Arrangements when combined with 18F's use of the EDIBLE Marks in its keyword advertising and in its metadata to drive Edible Arrangements' customers to the Infringing Website.

- 35 -

131.    In particular, once a consumer visits the Infringing Website, driven there by 18F's unlawful use of Edible Arrangements' famous Marks in its metadata and as keywords with every major search engine, 18F's Infringing Website requires that the consumer input a zip code before displaying products available in the consumer's area.  Upon information and belief, 18F's cut fruit arrangements are not available in many areas of the country and, when a consumer from one of those areas inputs his or her zip code, the above results are displayed -- misleading the consumer who was searching for the Edible Arrangements Website to believe that there are no cut fruit arrangements available in his or her geographic area.

132.    Further exacerbating this "bait and switch" tactic, the consumer is unknowingly redirected to 18F's other websites such as 1800Flowers.com or 1800baskets.com where he/she is now shown 18F's other gift products such as cookies, cakes and flowers instead of the Edible Arrangements products he/she was originally seeking to purchase.

133.    18F also makes infringing and highly confusing use of Edible Arrangements' DO FRUIT Marks on the Infringing Website by advertising "promo codes" for purchase of its items as follows:



134.    To cement the impression that 18F is either part of or associated with Edible Arrangements, 18F scrupulously copies the iconic Edible Arrangements Six Petal Daisy Design as well as Edible Arrangements overall arrangement designs.

135.    Numerous of 18F's fruit arrangements use a six petal daisy confusingly similar to Edible Arrangements' iconic Six Petal Daisy Design.  For example:

  

136.    Moreover, 18F has repeatedly and brazenly copied many of the overall designs of Edible Arrangements' cut fruit baskets.  For example:

| 18F's Product | Edible Arrangements' Product |
|---|---|
|  |  |

| __18F's Product__ | __Edible Arrangements' Product__ |
|:---:|:---:|
|  | |

137.    To even further confuse customers, 18F is even using a six petal daisy design on every page of the Infringing Website in the tab located in the upper left corner of the webpage

3787983v2

with the words "Edible Fruit Arrangements" as depicted below.



138.   When 18F markets goods using the Six Petal Daisy Design and copying the overall design of Edible Arrangements' cut fruit arrangements and does so in conjunction with repeated, conspicuous references to "Edible Arrangements," "Edible Fruit Arrangements," "Edible Bouquets", "Bouquet," and "DO FRUIT," consumers are induced from all directions to believe that they are purchasing goods sourced from, authorized by or otherwise connected to Edible Arrangements.

**18F Is Using the EA Marks on Its Own Website and on Third Party Websites**

139.   18F does not limit its infringement to the Infringing Website.  It is also using the confusingly similar designation on its own website, www.1800flowers.com:

> We're the best choice when shopping for gifts and flowers just because, or for special occasions like Mother's Day or Valentine's Day.  Choose the perfect gift from the best selection of roses, mixed bouquets, **edible fruit arrangements**, gourmet baskets, and other gifts. With a wide variety of colors, sizes and seasonal themes, we have flowers and gifts for everyone. With same-day gift delivery, we're also your source for last-minute gifts, too!

(emphasis added)

3787983v2

140.    18F uses that same confusingly similar designation on third-party websites, such

as www.apple.com:



141.    Upon information and belief, 18F also uses the "DO FRUIT" Mark in its

advertising on third party websites, such as www.coupons.com.  For example:



142.    Moreover, 18F has, through its agents at www.coupons.com, used and

displayed the EDIBLE ARRANGEMENTS Mark and the EDIBLE ARRANGEMENTS Mark

and Logo in connection with its "DO FRUIT" coupon campaign.  For example:



Upon information and belief, 18F and its agent, Coupons.com, Inc., have intentionally

attempted to confuse consumers and have succeeded in doing so.

3787983v2

## 18F INDUCED ITS DISTRIBUTORS AND OTHERS TO INFRINGE
## EDIBLE ARRANGEMENTS' VALUABLE INTELLECTUAL PROPERTY RIGHTS

143.    18F's scheme and course of conduct to usurp Edible Arrangements' valuable

goodwill extends to its "Fruit Bouquet" network of Distributors and advertising agents.

144.    18F has, upon information and belief, induced and caused its Distributors and

others to infringe on the EA Marks, including the EDIBLE ARRANGEMENTS Mark, the

BOUQUET Marks, the Six Petal Daisy Design and the EDIBLE ARRANGEMENTS Mark

and Logo.

145.    As an initial matter, 18F's network of Distributors selling 18F's "Fruit

Bouquet" line of products are, upon information and belief, selling and promoting 18F's

"Bouquet" products which, as discussed above, infringe on Edible Arrangements BOUQUET

Marks.

146.    Moreover, the 18F  Distributors are, upon information and belief, selling,

distributing and promoting 18F products that feature a six petal daisy design that is confusingly

similar to Edible Arrangements iconic Six Petal Daisy Design.

147.    Even more troubling, many of the 18F network of Distributors are using

designations that are similar or identical to the EDIBLE ARRANGEMENTS Mark.

148.    For example, as alleged below, defendant Fruit Bouquets Staten Island is using

the EDIBLE ARRANGEMENTS Mark and the confusingly similar "Edible Fruit

Arrangement" designation in the metadata for its website, www.fruitbouquetstatenisland.com,

in an effort to confuse and deceive customers.  Fruit Bouquets Staten Island is also using the

confusingly similar "Edible Fruit Arrangement" designation on its website, where it is selling

- 42 -

"Bouquet" products that incorporate a six petal daisy that is confusingly similar to Plaintiffs'

Six Petal Daisy Design.

149.   Similarly, the 18F distributor "Flowers by Addalia," on the website

fruitbouquetstomsriver.com, is using the confusingly similar designation "Edible Fresh Fruit

Arrangement" to market and promote 18F's "Fruit Bouquets" brand.



150.   This Distributor has simply added the phrase "fresh fruit" in the middle of the

EDIBLE ARRANGEMENTS Mark.  This confusingly similar designation, which is being used

and displayed in connection with 18F's "Bouquet" products featuring a six petal daisy, is

similarly calculated to confuse and deceive consumers.

151.   18F Distributor Watermill Flowers & Fruit Bouquets, which touts itself as "the

#1 Florist of Choice for 800-Flowers' Orders in Broward County" on its website,

www.watermillflowers.com, is using the confusingly similar designation "Edible Fruit

Bouquets" in its logo:

 

as well as the confusingly similar designations "Edible Fruit Bouquet Arrangements" and "Edible Fruit Bouquet Training Classes" to promote the 18F line of products.

152.    Moreover, this 18F Distributor has embedded on its site a YouTube video touting its business, at the conclusion of which the EDIBLE ARRANGEMENTS Mark and Logo are prominently displayed.



153.    That display of the EDIBLE ARRANGEMENTS Mark and Logo links to an Edible Arrangements YouTube video.  Following that link does not take the viewer to Edible Arrangements' YouTube channel, however.  Rather, that link on the 18F Distributor's

website displays Edible Arrangements' video framed on the 18F Distributor's website,

including the following images, among others:







- 45 -



154.    Upon information and belief, 18F has induced or encouraged its distribution network of independent florists partners and/or franchisees/licensees to infringe upon Edible Arrangements' EA Marks, including without limitation through its BloomNet program.

155.    Upon information and belief, 18F is aware of its network of Distributors' infringement of the EA Marks and continues to supply those Distributors with the components necessary to produce and sell its "Fruit Bouquet" line of products.

156.    In addition, as discussed above, upon information and belief, 18F has also induced or encouraged its agents at www.coupons.com to use and display the EDIBLE ARRANGEMENTS Mark and EDIBLE ARRANGEMENTS Mark and Logo in connection with 18F's "DO FRUIT" coupon campaign.

157.    Moreover, 18F was, upon information and belief, aware of coupons.com's infringement of Edible Arrangements Marks but continued to supply and permit distribution of the "DO FRUIT" coupon through that site.

- 46 -

## FRUIT BOUQUETS STATEN ISLAND'S UNLAWFUL CONDUCT

158.   Upon information and belief, Fruit Bouquets Staten Island, which touts itself as "part of the 1-800Flowers.com family," is a part of 18F's network of Distributors.

159.   Similar to 18F, Fruit Bouquets Staten Island is using the confusingly similar "Edible Fruit Arrangement" designation on its website, www.fruitbouquetstatenisland.com:



160.   It is also using the EDIBLE ARRANGEMENTS Mark and the confusingly similar "Edible Fruit Arrangements" designation in its metadata:

<meta name="description" content="Same day delivery Fruit Bouquet, Fresh Fruit Arrangements, **Edible Fruit Arrangements** in Staten Island NY.  Artistically designed fruit arrangements for birthdays, anniversary, new baby, sympathy or any occasion.   Petals on a Page will deliver Fruit Bouquets right to your door."/>

<meta name="keywords" content="**Edible Arrangements**, Fruit Arrangements, Floral Bouquets, Cheap Gifts, Cheap Funerals, Sympathy Flowers, Sympathy Fruit Baskets, Sympathy **Edible Fruit** , Church Decorators, Church Decorations, Tropical Flowers, Chocolates And Stuffed Animals, Funeral Fruit Bouquets, Sympathy Gift, Sympathy Flowers, Sympathy Baskets, Cheap Flower Delivery, Sympathy Flowers, Flower Arrangements, Sympathy Flower Delivery, Funeral

3787983v2

Arrangements, Rose Arrangements, Funeral Fruit Bouquets, Get Well Gifts, Get Well Gift Baskets, Cookie Baskets, Get Well Gift Basket, Best Gift Baskets, Anniversary Gifts" />

(emphasis added).

161.   The use of "Edible Arrangements" and "Edible Fruit Arrangements" in connection with the confusing similar "Bouquet" and "Fruit Bouquet" designations and the prominently displayed six petal daisy on Fruit Bouquets Staten Island's website are calculated to confuse customers into believing that there is an association between Fruit Bouquets Staten Island and Edible Arrangements.

### DEFENDANTS' UNLAWFUL CONDUCT HAS CAUSED AND CONTINUES TO CAUSE CONFUSION IN THE MARKET AND HAS HARMED AND DAMAGED EDIBLE ARRANGEMENTS

162.   18F is using and inducing others to use confusingly similar designations and designs in connection with the promotion and sale of its products in order to create an association between 18F and Edible Arrangements' famous EDIBLE ARRANGEMENTS Marks and valuable and distinctive EDIBLE Marks, BOUQUET Marks and DO FRUIT Marks, and Six Petal Daisy Design in the minds of the consuming public.

163.   Indeed, Fruit Bouquets Staten Island is using not only confusingly similar designations such as "Edible Fruit Arrangements" and variations of the BOUQUET Marks, but it is also using the incontestable EDIBLE ARRANGEMENTS Mark.

164.   These intentional references assure that internet search engines like Google will direct web shoppers seeking "Edible Arrangements" to 18F's infringing product line.  Further, these intentional references not only betray Defendants' unlawful scheme to misappropriate the goodwill inherent in the EA Marks but also serve to mislead consumers about the source of

- 48 -

18F's products and the association between Edible Arrangements and 18F and its network of Distributors, including Fruit Bouquets Staten Island.

165.    The Infringing Website and the Fruit Bouquets Staten Island website each uses the EA Marks and Fruit Bouquets Staten Island goes so far as to use the EDIBLE ARRANGEMENTS Mark, itself, in metadata.

166.    These infringing uses of the EA Marks are a clear effort to divert Edible Arrangements' customers to the infringing websites, creating the false impression that 18F either is or is connected to Edible Arrangements and causing consumers to associate Edible Arrangements famous and distinctive Marks with 18F's "Fruit Bouquets" business and network of Distributors.

167.    Thus, with disregard for Edible Arrangements' BOUQUET Marks, the Infringing Website and the websites of 18F's network of Distributors, including Fruit Bouquets Staten Island, use "Fruit Bouquets" as the name for their online businesses, the name for 18F's products, and in the 18F logo.  As displayed above, the Infringing Website also combines references to "bouquets" with "edible" to maximize the false impression that the parties are connected in some way.

168.    Given Edible Arrangements' use and advertisement of its DO FRUIT Marks since 2006, and Edible Arrangements' use of the DO FRUIT Mark as part of its toll-free telephone for orders, consumers encountering 18F's "DO FRUIT" promo codes will naturally assume that the codes apply to Edible Arrangements products or are otherwise authorized by Edible Arrangements, particularly when it is used in combination with Edible Arrangements' EDIBLE Marks and EDIBLE ARRANGEMENTS Mark and Logo.

169.    Indeed, 18F's infringements are already causing actual confusion among the purchasing public.  For example, customers have presented 18F's coupons for redemption on the Edible Arrangements Website, and have tried to order product viewed on the 18F website at local Edible Arrangements retail locations, and have contacted Edible Arrangements concerning orders placed on the Infringing Website, believing that those orders were placed with Edible Arrangements.

170.    The damage to Edible Arrangements from the use of its incontestable DO FRUIT Mark alone, over the two-day period that Edible Arrangements is aware of, exceeds $400,000.

171.    The likelihood of confusion - and the actual confusion that has already occurred - is exacerbated by the fact that 18F and Fruit Bouquets Staten Island market the 18F products to the same class of consumers to whom Edible Arrangements' products and services are marketed and sold.

172.    Upon information and belief, Defendants' acts described above were knowingly, intentionally and willfully and committed with knowledge of and disregard for Edible Arrangements' rights.

173.    Defendants' calculated imitation and infringement of the EA Marks is likely to cause, and is in fact causing confusion, mistake and deception among the consuming public as to the source and origin of Defendants' goods and services, and is likely to deceive and has deceived the public into believing that Defendants' goods and services originate from, are associated with or are authorized by Edible Arrangements, or that Edible Arrangements sponsors, owns, endorses, approves or otherwise is commercially involved with or related to

3787983v2

Defendants' business and/or that Defendants' goods and services are from the same source as Edible Arrangements, all to the damage and detriment of Edible Arrangements' reputation, goodwill and sales.

174.    Upon information and belief, by virtue of its unlawful conduct, Defendants have already made or will continue to make substantial profits and gains to which they are not in law or equity entitled.

175.    Defendants' conduct constitutes a classic form of unfair competition: Defendants are unlawfully appropriating the valuable reputation and goodwill of Edible Arrangements and its products for its own commercial gain, all in contravention of Edible Arrangements' incontestable trademark rights.

176.    As a result of Defendants' actions, Edible Arrangements and its franchisees have been damaged in an amount to be finally determined at trial, but upon information and belief, is at the time of filing this complaint at least $97,411,000.

177.    Moreover, the unlawful activities of Defendants have resulted and will continue to result in irreparable harm and injury to Edible Arrangements.  Among other harms, these acts deprive Edible Arrangements of its absolute right to determine the manner in which its image is presented to the general public; deceives the public as to the origin and sponsorship of Edible Arrangements' goods and services; wrongfully trade upon Edible Arrangements' reputation and exclusive rights in its intellectual property; and, to  lessen consumers' perception of the quality of Edible Arrangements' brand, goods and services.

**COUNT ONE:**      **(Trademark Infringement Pursuant to 15 U.S.C. § 1114 Against All Defendants)**

178.    Paragraphs 1-177, above, are repeated and re-alleged as if fully set forth herein.

179.    Defendants' activities as described above constitute trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. §1114(1)(A).

180.    By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

**COUNT TWO:**      **(False Designation of Origin Pursuant to 15 U.S.C. § 1125(a) Against All Defendants)**

181.    Paragraphs 1-180, above, are repeated and re-alleged as if fully set forth herein.

182.    Defendants' activities as described above constitute trademark infringement, false designation of origin, and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

183.    By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

**COUNT THREE:**    **(Trademark Dilution Against All Defendants)**

184.    Paragraphs 1-183, above, are repeated and re-alleged as if fully set forth herein.

185.    The EDIBLE ARRANGEMENTS Mark is famous and distinctive among the general consuming public and has enjoyed such fame and distinctiveness since long before 18F began to use the term and variations thereof.

186.    Defendants' activities as described above are likely to dilute, impair and blur the distinctiveness of the EDIBLE ARRANGEMENTS Mark in violation of 15 U.S.C. § 1125(c).

3787983v2

187.    By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

**COUNT FOUR:**        **(Contributory Trademark Infringement Against 18F)**

188.    Paragraphs 1-187, above, are repeated and re-alleged as if fully set forth herein.

189.    The use by 18F's network of Distributors and coupons.com of the EA Marks in connection with the marketing and sale of 18F's "Fruit Bouquet" products constitutes trademark infringement, false designation of origin, and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(a) & 1125(a)(1)(A).

190.    Upon information and belief, 18F intentionally induced its network of Distributors and coupons.com to infringe the EA Marks or continued to supply those distributors and coupons.com, which they knew or had reason to know were and are engaging in trademark infringement.

191.    18F is, therefore, contributorily liable for the harm and damage caused to Edible Arrangements.

192.    By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

**COUNT FIVE:**        **(Common Law Unfair Competition Against All Defendants)**

193.    Paragraphs 1-192, above, are repeated and re-alleged as if fully set forth herein.

194.    Plaintiffs have invested a substantial amount of time, effort and money in developing their goodwill in the marketplace and that goodwill is inextricably linked to the EA Marks.

195.    Defendants have appropriated Plaintiffs' goodwill in violation of Plaintiffs' valuable intellectual property rights.

196.    By virtue of the foregoing, Edible Arrangements has been damaged and will continue to be damaged absent relief from this Court.

**COUNT SIX:**          **(Violation of CUTPA, Conn. Gen. Stat. §§ 42-110a et seq. Against 18F)**

197.    Paragraphs 1-196, above, are repeated and re-alleged as if fully set forth herein.

198.    Plaintiffs are persons within the meaning of Conn. Gen. Stat. §§ 42-110a(3) and 42-110g(a) entitled to bring an action under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq. ("CUTPA").

199.    At all relevant times, 18F was a person acting in the conduct of trade or commerce within the meaning of Conn. Gen. Stat. §§ 42-110a et seq.

200.    The foregoing actions of 18F constitutes unfair and deceptive acts and practices in the conduct of trade or commerce that are unethical, unscrupulous and offensive to public policy, and are a violation of Conn. Gen. Stat. § 42-110b(a).

201.    As a result of the foregoing unfair and deceptive acts and practices, Plaintiffs have suffered an ascertainable loss within the meaning of Conn. Gen. Stat. §§ 42-110g(a) and have suffered damages in an amount to be determined at trial.

202.    The foregoing actions of 18F show calculated, deceitful and unfair conduct, and reckless indifference to the rights of the Plaintiffs.  Accordingly, 18F is liable to Plaintiffs for punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

- 54 -

203.    Plaintiffs are transmitting a copy of this Complaint to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut, as required by Conn. Gen. Stat. § 42-110g(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Edible Arrangements respectfully demands:

1.      A declaration that Defendants, by their unauthorized use of Edible Arrangements' registered trademarks and/or designations confusingly similar thereto, has infringed upon Edible Arrangements' trademarks and has used false designations of origin and has injured Plaintiffs' goodwill and business reputation in violation of law, and that Defendants have done so intentionally, deliberately and willfully, all to the loss and detriment of the Plaintiffs;

2.      A permanent injunction restraining Defendants and their officers, agents, servants, employees, representatives, parents, subsidiaries, affiliates, divisions, successors and assigns and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, from contributing to, causing or abetting any of the following actions:

      A.      using or infringing upon any of the EA Marks;

      B.      engaging in any acts or activities directly or indirectly calculated to trade upon the EA Marks or the reputation and goodwill of the Plaintiffs or which in any manner competes unfairly with Edible Arrangements or its affiliates or subsidiaries; and

      C.      making any representation including any use of brochures, letterhead, business cards, signs or any other written information or any Internet website indicating

- 55 -

or implying that Defendants are in any way connected or affiliated with or sponsored by Edible Arrangements or any of its affiliates or subsidiaries.

3.     That Defendants deliver to Edible Arrangements for destruction all material (including, without limitation, all products, catalogs, advertisements, promotional materials, brochures, signs, displays, stationary and business cards), within their possession, custody or control, either directly or indirectly, that infringe the EA Marks or any other marks or trade dress confusingly similar thereto, pursuant to 15 U.S.C. § 1118,

4.     That Defendants be directed to file with the Court and serve upon Edible Arrangements, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraphs 2 and 3, above, pursuant to 15 U.S.C. § 1116(a);

5.     That Defendants be directed to account for and pay to Edible Arrangements for all gains, profits and advantages realized by Defendants and 18F's network of Distributors resulting from the sale of infringing products pursuant to 15 U.S.C. § 1117(a).

6.     That Edible Arrangements recover from Defendants the greater of three times the amount of Defendants' profits or any damages sustained by Edible Arrangements, together with interest on such amount and the costs of this action pursuant to 15 U.S.C. § 1117(a);

7.      That Defendants be required to terminate the Internet website www.fruitbouquets.com and www.fruitbouquetstatenisland.com and any Internet website in Defendants' control using or incorporating the term "fruit bouquet" until all infringing material has been removed from such sites;

- 56 -

8.      That Defendants be directed to pay to the Plaintiffs their attorneys' fees pursuant to 15 U.S.C. § 1117;

9.      That 18F be directed to pay to the Plaintiffs their attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g;

10.     That 18F be directed to pay to the Plaintiffs punitive damages pursuant to Conn. Gen. Stat. § 42-110g;

11.     That Defendants be required to pay any punitive damages including treble damages as permitted by all applicable laws;

12.     That Defendants be required to pay the Plaintiffs the costs of this action and interest pursuant to applicable law; and

13.     That the Plaintiffs be granted such other relief in law or in equity as this Court deems just and proper.

## **JURY DEMAND**

The Plaintiffs demand a trial by jury on all issues so triable.

THE PLAINTIFFS,
EDIBLE ARRANGEMENTS, LLC and EDIBLE
ARRANGEMENTS INTERNATIONAL, LLC

By____/s/Glenn M. Cunningham_____
    Glenn M. Cunningham (ct09995)
    Patrick M. Fahey (ct13862)
    Susan S. Murphy (ct25321)
    For Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06103-2819
    (860) 251-5000
    Its Attorneys

3787983v2

EXHIBIT A

| MARK | REGISTRATION NO. | DATE REGISTERED |
|------|------------------|-----------------|
| EDIBLE ARRANGEMENTS | Reg. No. 2,356,362 | Registered 6/6/00 |
| EDIBLE ARRANGEMENTS | Reg. No. 2,934,715 | Registered 3/22/05 |
|  | Reg. No. 3,141,566 | Registered 9/12/06 |
| GET FRESH WITH EDIBLE ARRANGEMENTS! | Reg. No. 3,452,283 | Registered 6/24/08 |
| EDIBLE ARRANGEMENTS ARRANGEMENT FOAM | Reg. No. 3,545,601 | Registered 12/9/08 |
| EDIBLE NUMBERS | Reg. No. 3,545,605 | Registered 12/9/08 |
| FRUTATION BY EDIBLE ARRANGEMENTS | Reg. No. 1,2/23/08 | Registered 12/23/08 |
| THE EDIBLE ARRANGEMENTS CORPORATE COLLECTION | Reg. No. 3,579,381 | Registered 2/24/09 |
| LITTLE EXPRESSIONS BY EDIBLE ARRANGEMENTS | Reg. No. 3,594,848 | Registered 4/24/09 |
| EDIBLE BRANDS | Reg. No. 3,654,276 | Registered 7/14/09 |
| EDIBLE ARRANGEMENTS | Reg. No. 3,844,160 | Registered 9/7/10 |
|  | Reg. No. 3,844,161 | Registered 9/7/10 |
| FANCY FRUIT BY EDIBLE ARRANGEMENTS | Reg. No. 3,847,142 | Registered 9/14/10 |
| FRUTATION BY EDIBLE ARRANGEMENTS | Reg. No. 3,888,967 | Registered 12/14/10 |

| MARK | REGISTRATION NO. | DATE REGISTERED |
|---|---|---|
| EDIBLE TO GO | Reg. No. 4,068,508 | Registered 12/6/11 |
| WELCOME TO THE WORLD OF EDIBLE ARRANGEMENTS | Reg. No. 4,273,377 | Registered 1/8/13 |
| *Edible To Go* | Reg. No. 4,300,422 | Registered 3/12/13 |
| EDIBLE | Reg. No. 4,319,940 | Registered 4/16/13 |
| EDIBLE ARRANGEMENTS | Reg. No. 4,328,107 | Registered 4/30/13 |
| EDIBLE CARES | Reg. No. 4,471,794 | Registered 1/21/14 |
| EDIBLE NUMBERS | Reg. No. 4,592,970 | Registered 8/26/14 |

EXHIBIT B

| MARK | REGISTRATION NO. | DATE REGISTERED |
|---|---|---|
| BERRY CHOCOLATE BOUQUET | Reg. No.  3296243 | Registered9/25/07 |
| CHOCOLATE BANANA BOUQUET | Reg. No. 3393667 | Registered 3/4/08 |
| DIPPED FRUIT BOUQUET | Reg. No. 3396702 | Registered 3/11/08 |
| BERRY BOUQUET | Reg. No.  3429717 | Registered 5/20/08 |
| BERRY TREE BOUQUET | Reg. No. 3429718 | Registered 5/20/08 |
| BREAST CANCER AWARENESS BOUQUET | Reg. No. 3464761 | Registered 7/8/08 |
| EXTRA EFFORT BOUQUET | Reg. No. 3499017 | Registered 9/9/08 |
| FRUITFUL ACHIEVEMENT BOUQUET | Reg. No. 3501780 | Registered 9/16/08 |
| MORNING MOTIVATOR BOUQUET | Reg. No. 3501785 | Registered 9/16/08 |
| YOU'RE THE BEST BOUQUET | Reg. No. 3501786 | Registered 9/16/08 |
| THE ACCOMPLISHMENT BOUQUET | Reg. 3501781 | Registered 9/16/08 |
| THE RECOGNITION BOUQUET | Reg. No. 3501782 | Registered 9/16/08 |
| SWEETHEART BOUQUET | Reg. No. 3503964 | Registered 9/23/08 |
| ROCK A BYE BOUQUET | Reg. No. 3527476 | Registered 11/4/08 |
| SWEET LIBERTY BOUQUET | Reg. No. 3527505 | Registered 11/4/08 |
| JOB WELL DONE BOUQUET | Reg. No.  3527515 | Registered 11/4/08 |
| WELCOME ABOARD BOUQUET | Reg. No. 3527514 | Registered 11/4/08 |
| AMBITION BOUQUET | Reg. No.  3543593 | Registered 12/9/08 |

| MARK | REGISTRATION NO. | DATE REGISTERED |
|---|---|---|
| PATRIOTIC APPRECIATION BOUQUET | Reg. No.  3615353 | Registered 5/5/09 |
| PEANUT BUTTER BOUQUET | Reg. No. 3694410 | Registered 10/6/09 |
| PEARADISE BOUQUET | Reg. No.  3704604 | Registered 11/3/09 |
| FRUIT TRUFFLES BOUQUET | Reg. No. 3750846 | Registered 2/16/10 |
| A BIRTHDAY BOUQUET | Reg. No.  3760678 | Registered  4/16/10 |
| PEANUT BUTTER CHOCOLATE BOUQUET | Reg. No. 3815967 | Registered 7/6/10 |
| SWEET ANNIVERSARY BOUQUET | Reg. No. 3853513 | Registered 9/28/10 |
| DIPPEDFRUIT.COM | Reg. No. 3869223 | Registered 11/2/10 |
| BLACK CAT BOUQUET | Reg. No. 4169485 | Registered 7/3/12 |
| MERRY GINGERBREAD MEN BOUQUET | Reg. No. 4322954 | Registered 4/23/13 |

3787983v2

EXHIBIT C

| MARK | REGISTRATION NO. | DATE REGISTERED |
|------|------------------|-----------------|
| DO FRUIT | Reg. No. 3198965 | Registered 1/16/07 |
| I DO FRUIT | Reg. No. 3837310 | Registered 8/24/10 |
| WE DO FRUIT | Reg. No. 3837335 | Registered 8/24/10 |

3787983v2