UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDIBLE ARRANGEMENTS INTERNATIONAL, LLC and EDIBLE ARRANGEMENTS, LLC, | : : : | CIVIL ACTION NO. 3:14-CV-01744 (MPS) |
| Plaintiffs/Counterclaim Defendants, | : : | |
| v. | : : | |
| 1-800-FLOWERS.COM, INC., 800-FLOWERS, INC., and JUNE V. DELANEY and DAVID DELANEY d/b/a FRUIT BOUQUETS STATEN ISLAND, | : : : : : | February 27, 2015 |
| Defendants/Counterclaim Plaintiffs. | : : | |

## COUNTERCLAIM

Defendants/Counterclaim-Plaintiffs 1-800-Flowers.com, Inc. ("1-800-Flowers.com") and

800-Flowers, Inc. ("800-Flowers") (collectively "1-800-Flowers") state their Counterclaim

against Plaintiffs/Counterclaim-Defendants Edible Arrangements International, LLC and Edible

Arrangements LLC (collectively "Edible Arrangements") as follows:

### I.      NATURE OF THE CLAIMS

1.      This Counterclaim arises out of Edible Arrangements' having engaged in

anticompetitive activities and having fraudulently and otherwise improperly obtained trademark

registrations that it has misused to the detriment of consumers.

2.      Edible Arrangements and 800-Flowers compete in the market for online sales of

edible fruit arrangements, also known as fruit bouquets.  Edible Arrangements dominates this

market, controlling 80% or more of it.

3.      To maintain its market dominance, Edible Arrangements has fraudulently

obtained trademark registrations, has improperly claimed trademark rights in generic terms that

1

competitors need to use to be able to compete effectively in the market, and has improperly sought to prevent fair use of descriptive terms that is expressly permitted by federal law.

4.      In order to make it more difficult and expensive for its rivals to compete, Edible Arrangements has also threatened to bring lawsuits against competitors based on its improperly obtained trademark registrations and unwarranted claims of rights in generic terms, and has in fact filed baseless infringement lawsuits, including this lawsuit.

5.      Edible Arrangements' threats and claims have chilled competition and, unless enjoined, will continue to chill competition, by making it too burdensome and expensive for competitors to use generic terms or to make lawful fair use of terms that rightly belong in the public domain.  Edible Arrangements has thereby driven up competitors' costs, which has prevented and, unless enjoined, will continue to prevent competitors, including 800-Flowers, from competing more aggressively against Edible Arrangements, and will thereby harm consumers.  Edible Arrangements' anticompetitive conduct has also deprived and, unless enjoined, will continue to deprive competitors of common, generic terms that anyone selling edible fruit arrangements needs to use to communicate easily and effectively to consumers about the nature of the product being offered.  Edible Arrangements has thus deprived and, unless enjoined, will continue to deprive consumers of essential information about competing products.

6.      Through its anticompetitive conduct, Edible Arrangements has been able to maintain its dominance and, accordingly, its market and monopoly power in the relevant market for the online sale of edible fruit arrangements and bouquets.  This misconduct has enabled Edible Arrangements to exclude various competitors in whole or part from the market, create barriers to entry and expansion, and control prices charged for edible fruit arrangements sold online, all of which has insulated Edible Arrangements from competition.  Unless enjoined,

2

Edible Arrangements, through its anticompetitive and illegal acts, will be able to maintain or acquire monopoly power and the ability to exclude competitors and control price.

7.      Therefore, this Counterclaim seeks:  (a) damages and injunctive relief for Edible Arrangements' unfair and anticompetitive activities in violation of the federal antitrust laws, 15  U.S.C. § 2 *et seq*., and in violation of state unfair trade practices law, Connecticut General Statutes § 42-110b *et seq*.; (b) a declaratory judgment under the federal Declaratory Judgment Act, 28  U.S.C. § 2201 *et seq*. to resolve an actual case or controversy as to the validity of Edible Arrangements' asserted trademark rights in EDIBLE, EDIBLE ARRANGEMENTS, a claimed family of BOUQUET marks, and a claimed "daisy design" and 1-800-Flowers' right to use terms and designs without interference from Edible Arrangements; and (c) cancellation of Edible Arrangements' improperly obtained and misused trademark registrations, pursuant to Section 37 of the federal Lanham Act, 15 U.S.C. § 1119, as well as other related relief.

## II.      THE PARTIES

8.      Defendant/Counterclaim-Plaintiff 1-800-Flowers.com, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One Old Country Road, Carle Place, New York, 11514.

9.      Defendant/Counterclaim-Plaintiff 800-Flowers, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at One Old Country Road, Carle Place, New York, 11514.

10.      800-Flowers, Inc. offers, markets, and sells the edible fruit arrangements and bouquets that are the subject of this case.  It is the licensee of certain marks owned by 1-800-Flowers.com, which does not offer, market, or sell edible fruit arrangements or bouquets.

3

11.     1-800-Flowers.com wholly owns 800-Flowers, Inc.  From an antitrust standpoint, 1-800-Flowers.com and 800-Flowers share a complete unity of economic interest with regard to marketing and selling edible fruit arrangements or bouquets.

12.     Upon information and belief, Edible Arrangements International, LLC is a Delaware limited liability company having its principal place of business at 95 Barnes Road, Wallingford, Connecticut, 06492.

13.     Upon information and belief, Edible Arrangements, LLC is a Connecticut limited liability company having its principal place of business at 95 Barnes Road, Wallingford, Connecticut, 06492.

14.     Upon information and belief, from an antitrust standpoint, Edible Arrangements International, LLC and Edible Arrangements, LLC share a complete unity of economic interest with regard to marketing and selling edible fruit arrangements or bouquets.

### III.     JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and under 15 U.S.C. §§ 15 and 26.  It has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over the Counter-Defendants because the Counter-Defendants are domiciled in this District, regularly do business in this District, and otherwise have contacts with this District sufficient to permit the exercise of personal jurisdiction.

17.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because the Counter-Defendants reside in this District and are subject to personal jurisdiction in this District.

4

US2008 6303434 13

## IV.   FACTUAL BACKGROUND

A. 1-800-Flowers and Expansion of 800-Flowers Into Sale of Edible Fruit Arrangements

18.      1-800-Flowers.com is a holding company.  It owns certain trademarks that it licenses to subsidiaries, and it wholly owns the stock of several subsidiaries, including 800-Flowers, one of the nation's leading online retailers of floral and edible gifts.

19.      In 2011, 800-Flowers entered the business of selling edible fruit arrangements designed as bouquets, and developed a logo -- a stylized strawberry and vine design, coupled with several word combinations, each of which included the words "fruit bouquets," and several of which included other marks owned by 1-800-Flowers (the "Strawberry Design Fruit Bouquets Marks") -- to be used with the business.

20.      1-800-Flowers.com filed six trademark applications to protect the logo, U.S. Application Serial Nos. 85,311,052, 85,311,102, 85,311,131, 85,314,733, 15,314,758, and 85,314,779, with the United States Patent and Trademark Office (the "USPTO").  In every application, 1-800-Flowers.com disclaimed the words "fruit bouquets," meaning that it did not seek to assert exclusive rights in the term apart from the mark in the application.  In connection with the start of the new business, 1-800-Flowers also acquired the mark BOUQUET OF FRUITS, including the goodwill and three federal registrations therefor, from its previous owner, which had used the mark in connection with edible fruit gift products since 1987.

21.      Beginning in 2011 and continuously since, 800-Flowers has used the Strawberry Design Fruit Bouquets Marks in connection with edible fruit arrangements and retail services offering edible fruit arrangements, also known as fruit bouquets.

22.      800-Flowers markets and sells its edible fruit arrangements and bouquets online throughout the United States for delivery across the country.

5

23.    800-Flowers relies on the participation of independent florists and other distributors in its BloomNet network to fulfill the orders that consumers place online for its edible fruit arrangements.

B.  <u>The Relevant Product and Geographic Market:  The Online Sale of Edible Fruit Arrangements in the United States</u>

24.    A relevant product market exists for the online sale of edible fruit bouquets.

25.    Edible fruit arrangements or bouquets are a unique gift in that they serve as both a beautiful decoration that can be displayed on a table and as an edible treat for special occasions, and at parties and other gatherings.  The fruit in an edible fruit bouquet is sculpted into a design to resemble flowers.  Edible fruit bouquets thus combine artistic design elements with functional elements. This combination renders an edible fruit bouquet unlike other types of gifts such as flowers, traditional fruit baskets, or other food gifts.

26.    Customers who wish to have edible fruit arrangements or bouquets delivered to family, friends or themselves generally would not consider other types of gifts to be reasonably interchangeable substitutes because other gifts do not possess the same combination of qualities and characteristics.

27.    Several characteristics distinguish edible fruit arrangements from other potentially substitutable products and create a unique demand for them.  For instance, customers recognize and appreciate the enhanced skill required to cut whole fruit into designs to resemble flowers, the novelty of having a center-piece or conversation-piece that is also edible, and the health benefits of serving decorative fruit offerings.

28.    An edible fruit bouquet conveys a different sentiment and purpose than a floral bouquet.  And in many, if not most, instances in which consumers buy edible fruit bouquets,

6

flowers are not a viable alternative because, for example, the recipient may be allergic to flowers, social convention may make it awkward to send flowers to male recipients, the recipient dislikes flowers, the event may not be appropriate for flowers, or the sender wishes to give something more unique and unconventional.

29.     Similarly, a fruit basket of uncut fruit does not carry with it the same sentiment as an artfully designed bouquet of fruit cut into the shape of individual flowers.  Edible fruit bouquets are more artistic and ornate than a traditional fruit basket, which are generally not suitable either as a centerpiece or as part of a buffet.

30.     Consumers also do not consider bouquets or arrangements made from other products, such as candy or baked goods, designed as bouquets to be reasonable alternatives to fruit bouquets, because they view edible fruit bouquets as healthier and more elegant.

31.     Moreover, consumers have a strong preference to buy edible fruit arrangements online, rather than through a brick-and-mortar outlet. Online purchases afford consumers conveniences not available through brick-and-mortar alternatives.  Having the product delivered is crucial, since a primary benefit of the product is its decorative features, which can be damaged or degraded from improper handling or transportation.  Because the product is often given as a gift, it is far less convenient or practical for a consumer to buy the product at a brick-and-mortar outlet, transport it home, store it, and then transport or to ship it to the ultimate recipient's address, than to buy it online and have it delivered directly to the ultimate recipient.  And for those instances in which the product is to be delivered directly to the ultimate recipient, it makes little sense for the buyer to bear the inconvenience of traveling to a brick-and-mortar outlet (if that is even an option) simply to physically pick up the product when he or she could save a great

7

deal of time and effort by purchasing online.  Consumers therefore generally prefer to buy the product online and have the product delivered directly to the ultimate recipient.

32.     For these reasons, other theoretically possible substitutes do not serve as reasonable economic substitutes for edible fruit arrangements or bouquets sold online and therefore do not constrain the prices charged for online sales of edible fruit arrangements. Upon information and belief, if online sellers of edible fruit arrangements were to raise their prices by a small but not insignificant amount, customers would not switch to other products (such as flowers, traditional fruit baskets, or other edible decorative arrangements made from products such as baked-goods or candies) and thereby would be compelled to pay the higher price or purchase edible fruit bouquets through brick-and-mortar outlets.

33.     A relevant submarket exists for online sales of edible fruit arrangements for delivery out-of-area (the "out-of-area submarket").

34.     Consumers looking to purchase an edible fruit bouquet for a recipient outside the purchaser's immediate geographic area often lack sufficient information to know where to buy the product in the recipient's area.  In the vast majority of out-of-area purchases, the only reasonable option for these consumers is to buy the product online from a retailer with an expansive geographic network.

35.     The relevant geographic market for this relevant market and submarket is the United States.

36.     Consumers in the United States lack many or any reasonable options to purchase such edible fruit arrangements for delivery within the United States from sources outside.  And it is common for companies selling edible fruit arrangements online in the United States to sell to consumers and arrange for delivery across the country.  Accordingly, the United States is the

8

relevant geographic market in which competition for the online sales of edible fruit arrangements takes place

37.     Edible Arrangements markets and sells edible fruit arrangements and bouquets online in both the relevant market and submarket.  The orders placed online with Edible Arrangements are fulfilled by distributors.

38.     800-Flowers markets and sells edible fruit arrangements and bouquets online in both the relevant market and submarket.  The orders placed online with 800-Flowers are fulfilled by distributors in 800-Flowers' BloomNet network.

39.     Edible Arrangements and 800-Flowers directly compete in the relevant market and submarket.

40.     Edible Arrangements holds and controls a dominant share both in the relevant market for online sales of edible fruit arrangements and in the relevant out-of-area submarket.

41.     In both the relevant market and submarket, Edible Arrangements' market share exceeds 80%.

C.   Edible Arrangements' Development and History of Litigation

42.     Edible Arrangements was started by its founder and primary shareholder, Tariq Farid.  Mr. Farid took the idea for selling edible fruit arrangements designed as bouquets from two women, who developed the idea in approximately 1984 and who had formed a company called Incredibly Edible Delites, Inc. ("Incredibly Edible").  Over the years, Incredibly Edible was so successful in its sales of edible fruit bouquets that it sold franchises around the country.

43.     Mr. Farid developed an extensive knowledge of Incredibly Edible's business, products, techniques, mechanisms, procedures, and marketing when, in 1997, Incredibly Edible engaged him to assist it in the purchase, installation, and set-up of certain retail software.  After

9

learning Incredibly Edible's business, Mr. Farid formed Edible Arrangements, LLC to compete

with it, copying not only the edible fruit arrangements Incredibly Edible offered, but also its

brochures, website, and other aspects of its business.  Mr. Farid's and Edible Arrangements'

unfair competition and infringement led to two lawsuits between the parties, both of which were

ultimately settled under agreements filed with this Court.

44.     In the Settlement Agreement entered in the Court case record in December 2005,

Edible Arrangements expressly agreed that Incredibly Edible could use the terms "edible" and

"arrangement" in its marketing and advertising of edible fruit arrangements, including in online

advertising, and regardless of whether the words were in upper or lower case, so long as they

were not used contiguously.  Edible Arrangements thereby admitted use of those words by its

competitors was appropriate.  Thereafter, Incredibly Edible and Edible Arrangements continued

to compete in the edible fruit arrangements market, both using "Edible" and "Arrangements," at

least until the lingering burden of the expense Incredibly Edible had incurred in litigating with

Edible Arrangements forced it to cease doing business and to sell its trademarks.

45.     The Incredibly Edible litigation is not the only litigation with competitors in

which Edible Arrangements has been involved.

46.     Indeed, in February, 2005, Edible Arrangements sued another direct competitor,

Fresh Fruit Bouquet Company, Inc. for, among other things, trademark infringement, based on

its use of a "Bouquet" mark.  That case concluded by this Court entering a Consent Judgment in

2008.  Under the Consent Judgment, Edible Arrangements admitted that Fresh Fruit Bouquet's

website that prominently used and displayed the brand "Fresh Fruit Bouquet Company" and

prominently offered numerous edible fruit arrangements under "Bouquet" names did not infringe

any of Edible Arrangements' trademark rights.  Under the Consent Judgment, Edible

10

Arrangements also admitted the "Products, Designs, Websites and Promotional Materials" used in the "Fresh Fruit Bouquet franchise system and business" did not infringe any of Edible Arrangements' trademark rights.

47.     At the time of this Consent Judgment and Edible Arrangements' judicial admission of no infringement, Fresh Fruit Bouquet Company's website:  a) used "Edible Fruit Arrangements" in its title tags -- a use Edible Arrangements now claims is infringing, and b) prominently displayed fruit arrangements that included the six petal daisy pineapple design – that Edible Arrangements now claims in this case it alone can use.  Following the Consent Judgment, Fresh Fruit Bouquet Company continued to use the website, the mark Fresh Fruit Bouquet Company, other Bouquet product names, "Edible Fruit Arrangements," and the six petal daisy pineapple design in competition with Edible Arrangements until it too went out of business.

48.     More recently, in 2014, Edible Arrangements also filed suit against Provide Commerce, Inc., which is engaged in the sale online of dipped fruit, claiming its use of the descriptive phrase "Edible Fruit Arrangements" to describe its products in online advertising is an infringement of the putative Edible Arrangements mark, *Edible Arrangements, LLC v. Provide Commerce, Inc.*, United States District Court for the District of Connecticut, Case No. 3:14-CV-00250-VLB.  That suit is ongoing.

49.     Edible Arrangements has not confined its litigation and demands to large companies.  It has also filed suit and asserted demands against smaller ones.  It is currently suing a business that uses the brand name "Edible Creations" in connection with its online sale of edible fruit arrangements for trademark infringement, *Edible Arrangements v. Thomas*

11

*Drummond*, Case No. 1:14-CV-00315, in the United States District Court for the Northern District of Indiana.

50.     And in 2013, it sent numerous baseless demand letters to persons and companies selling edible fruit arrangements online, asserting rights in generic terms and demanding:  a) that Arizona Family Florist not use the domain name incrediblearrangements.com, b) that a business in New York not use the domain names chocolateediblearrangements.com and ediblefruitarrangements.com, c) that Commack Florist and Gift in New York not use "Edible," "Edible Fruit Arrangements," or "Edible arrangements" in its online advertising, d) that a business in Louisiana not use the brand name "Edible Flowers," or the domain name edibleflowersmonroe.com and later, in 2014, demanding it cease using product names that include "Bouquet," e) that a business in Indiana not use the brand name Edible Bouquets by Janaki or the domain name ediblebouquetsbyjanaki.com, and later in 2014, that it cease using other marks and designs, and f) that Edible Bouquets LLC not use "Edible Bouquets" or the domain name ediblebouquetsandmore.com.

### D.  Edible Arrangements' Applications to Register and Registration of Generic and Non-Distinctive Terms and Functional Design

51.     In connection with its business, Edible Arrangements has applied to the USPTO to register as trademarks multiple non-distinctive, and therefore unprotectable terms, including "Edible," "Edible Arrangements," and a series of "Bouquet" phrases.

52.     In seeking a number of the registrations, Edible Arrangements has made material misrepresentations to the USPTO with the intent to defraud this government agency responsible for issuing federal trademark registrations.  In so doing, Edible Arrangements has obtained registrations that, but for its misrepresentations, would not have issued.

53.     After obtaining these and other registrations, Edible Arrangements has misused the registrations to assert wrongfully to 1-800-Flowers and to numerous competitors that such registrations afford Edible Arrangements rights that the registrations do not grant.

E.   Edible Arrangements' Applications to Register Marks Including "Bouquet"

54.     Edible Arrangements first applied to the USPTO in 2006 to register a mark that included the term "Bouquet":  "Berry Chocolate Bouquet."  The entire mark was generic for a bouquet made of berries and chocolate.  Alternatively it was, at best, merely descriptive and Edible Arrangements had not developed secondary meaning for it.  Edible Arrangements accordingly was not entitled to registration of this non-distinctive term under trademark law or the rules of the USPTO, but nevertheless obtained Registration No. 3,296,243.

55.     Edible Arrangements then applied to register another generic phrase, "Chocolate Banana Bouquet."  When the USPTO refused registration on the Principal Register, Edible Arrangements accepted Registration on the Supplemental Register, meaning that Edible Arrangements admitted that the term was not distinctive and therefore did not confer exclusive rights.  Given that the mark was generic, Edible Arrangements was not entitled even to registration on the Supplemental Register, but nevertheless received Registration No. 3,393,667.

56.     Over the next five years, from 2006 through 2011, Edible Arrangements filed 24 more applications to register terms consisting of "Bouquet" together with other generic or descriptive terms.  In examining these applications, the USPTO repeatedly informed Edible Arrangements it could not claim exclusive rights in "Bouquet."  Edible Arrangements, therefore, disclaimed the term "Bouquet" in 14 of the applications, meaning Edible Arrangements admitted the term was generic or descriptive and that it could not claim exclusive rights in the term alone, or at all except as used in the specific mark for which it was applying.  Edible Arrangements also

13

accepted registration on the Supplemental Register for 6 more such applications, thereby admitting it lacked trademark rights in those 6 terms at the time.  Upon the USPTO's rejection of yet another of the "Bouquet" applications, Edible Arrangements accepted the USPTO's position that Edible Arrangements could not assert rights in "bouquet" and abandoned the application altogether.

57.     Notwithstanding Edible Arrangements' multiple admissions of non-exclusive rights in "bouquet," for two applications filed in 2007, Edible Arrangements represented to the USPTO that it had made substantially exclusive use of the term "bouquet."  Specifically, when the USPTO rejected Edible Arrangements' applications to register "Berry Tree Bouquet" and "Sweetheart Bouquet" on the grounds that "bouquet" was merely descriptive, Edible Arrangements submitted sworn statements to the USPTO that it had "substantially exclusive and continuous use [of the term "bouquet"] for at least the five years immediately before."  Edible Arrangements thereby fraudulently induced the USPTO to issue U.S. Trademark Registration Nos. 3,429,718 and 3,503,964.

58.     This sworn representation of "substantially exclusive use" was false in each instance, and Edible Arrangements knew it was false.  Edible Arrangements knew the sworn representation was false because, among other things, Edible Arrangements knew its direct competitor, Fresh Fruit Bouquet Company, used the mark Fresh Fruit Bouquet and product names that included "Bouquet."

59.     Edible Arrangements also knew at the time it made the representation that another company that sold fruit arrangements had used the mark "Bouquet of Fruits" since 1987 and owned U.S. registrations for the mark.  In fact, Edible Arrangements had asserted to that company in a letter dated January 4, 2007, that numerous others used the term "Bouquet" in

14

connection with food, stating there were 76 trademark registrations that included "Bouquet" in reference to food and food services, such that no one could claim exclusive rights in the term.

60.     Edible Arrangements' misrepresentation to the USPTO of substantially exclusive use was material in each instance.  But for Edible Arrangements' sworn misrepresentation, the USPTO would not have issued a registration at all, or would only have issued a registration in which Edible Arrangements disclaimed "bouquet" and admitted it did not have exclusive rights in that term.

61.     Accordingly, Registration Nos. 3,429,718 for BERRY TREE BOUQUET and 3,503,964 for SWEETHEART BOUQUET were fraudulently obtained and are invalid.

62.     In addition to the fact that others used the term "bouquet" in connection with edible fruit arrangements, Edible Arrangements itself routinely used "bouquet" as a generic term rather than as a trademark.  And over the years, more and more third parties used the term "bouquet" to identify fruit arrangements generally, such that, whether it was generic originally or not, "bouquet" clearly became generic.  Generic and non-distinctive terms cannot be the basis for a "family" of marks.  However, once 1-800-Flowers applied to register the Strawberry Design Fruit Bouquets marks in 2011, Edible Arrangements embarked on a course to try to assert a "family" of marks based on this generic and non-distinctive term in order to prevent 800-Flowers and other competitors from using a public domain term long used in the industry.

63.     Edible Arrangements knew it needed time to trump up its so-called "family" of "Bouquet" marks.  Therefore, in 2011, when 1-800-Flowers sought to address Plaintiff's assertions of exclusivity with respect to "bouquet" in a declaratory judgment action filed in the United States District Court for the Eastern District of New York, *1-800-Flowers.com, Inc. v. Edible Arrangements, LLC*, Case No. 12 Civ. 1483 (DRH)(ARL), Edible Arrangements filed a

US2008 6303434 13

motion to dismiss the case, informing the Court and 1-800-Flowers that it did not claim infringement as a result of 1-800-Flowers' use of "Fruit Bouquets." Even though 1-800-Flowers was using both the words "Fruit Bouquets" and the six petal daisy design about which Edible Arrangements now complains, Edible Arrangements expressly stated to the federal district court in its brief filed July 17, 2011 that: "The **only** dispute between the parties relates to the **registration** of Plaintiff's applied for marks …." (emphasis supplied). Edible Arrangements further accused 1-800-Flowers of trying to "manufacture a controversy regarding infringement where none exists." Edible Arrangements thereby obtained dismissal of the case.

64.    Edible Arrangements then went about effectuating its scheme to try to take the industry's long-used term "bouquet" from the public domain. Embarking on a campaign to register a host of "bouquet" phrases, from June, 2011 through 2014, Edible Arrangements applied to register 26 more putative marks consisting of "bouquet" plus other generic or descriptive terms. Although Edible Arrangements disclaimed exclusive rights in "bouquet" in 16 of these applications, thereby again admitting it could not prevent others from using the term, it began trumping up its claimed "family" of marks by swearing it had substantially exclusive use of the term "bouquet" in connection with eight of these new applications.

65.    Edible Arrangements swore it had substantially exclusive use, when it did not, in a deliberate effort to keep competitors and potential competitors from using the word "Bouquet" and, thus, prevent them from effectively and efficiently identifying and describing their own edible fruit bouquets.

66.    As before, each such sworn statement was false and Edible Arrangements knew it was false because it knew about use of "bouquet" by at least Fresh Fruit Bouquet Company and Bouquet of Fruits and because of extensive generic use of the term, including by Edible

16

Arrangements itself.  Edible Arrangements made each such statement with the intent to defraud

the USPTO.  In each instance, the statement was material because, but for the statement, the

USPTO would not have approved the applications for registration as it did.  Because

1-800-Flowers opposed the applications, the ultimate registration did not issue in most instances.

However, the USPTO approvals Edible Arrangements obtained for Application Serial

Nos. 85/795,632 for THE ORIGINAL FRESH FRUIT BOUQUET, 85/814,687 for

VALENTINE'S SWEETIE BOUQUET, 85/837,831 for JUST BECAUSE BOUQUET,

85/837,914 for CHEER ME UP BOUQUET, 85/919,379 for WATERMELON KIWI SUMMER

BOUQUET, and 86/138,558 for HOLIDAY STAR BOUQUET were obtained as a result of

fraud and are void, and the registration that issued as a result of Edible Arrangements' false

statement, Registration No. 4,635,801, issued as a result of fraud and is also void and invalid.

      67.     In addition, for a number of applications, Edible Arrangements fraudulently

represented to the USPTO that it had a *bona fide* intent to use the applied mark when in fact it

knew it did not.  That false representation was material and induced the USPTO to approve the

application in each instance, because the USPTO would not have approved the applications but

for the false representation.  Accordingly, the USPTO approvals for Application Serial

Nos. 85/619,454; 85/795,638; 85/795,632; 85/814,687; 85/901,891; 85/904,616; 85/918,912;

85/919,379; and 86/138,558 were also obtained as a result of this additional fraud and are void.

      68.     In processing the flood of Edible Arrangements' trademark applications, the

USPTO continued repeatedly to inform Edible Arrangements it could not claim exclusive rights

in "Bouquet," and in light of extensive third party use, increasingly informed Edible

Arrangements that "bouquet" is generic.  For example, in March, 2014, the USPTO refused

Edible Arrangements' attempt to register "Dipped Fruit Bouquet," and informed Edible

Arrangements that its purported proof that the term had acquired distinctiveness was insufficient because, as the USPTO stated, "the term 'fruit bouquet' appeared in a Google search 294,000 times" and "no amount of purported proof that a generic term has acquired secondary meaning can transform that term into a registrable trademark or service mark."  Edible Arrangements thereafter abandoned the application.

69.     In addition, in September, 2014, just before Edible Arrangements filed this case, in connection with Edible Arrangements' application to register "Holiday House Bouquet," the USPTO once again informed Edible Arrangements it could not claim exclusive rights in "bouquet," refusing registration.  Among other things, the USPTO informed Edible Arrangements:

> bouquet is commonly used to refer to fruit arrangements that are arrange[d] in such a way that they resemble a bouquet of flowers. <u>An applicant may not claim exclusive rights to terms or designs that others may need to describe or show their goods or services in the marketplace</u>.  (emphasis supplied)

Edible Arrangements thereafter abandoned this application, acquiescing to the USPTO position that it could not claim exclusive rights in "bouquet".

70.     Notwithstanding Edible Arrangements' admission to the United States Federal District Court in 2011 that it did not claim infringement from 1-800-Flowers' use of "Fruit Bouquets" and notwithstanding that the USPTO informed Edible Arrangements in no uncertain terms repeatedly that it had no exclusive rights to "bouquet" and most recently informed it that the term was generic, Edible Arrangements filed this action claiming that it has exclusive rights in the term "bouquets" for edible fruit arrangements designed as bouquets and that 1-800-Flowers' use of "Fruit Bouquets" now allegedly is infringing its claimed rights.

18

F.   Edible Arrangements' Applications to Register Edible Arrangements and Edible

71.    The term "Edible" is a generic term, defined in numerous dictionaries, including, for example, the *New Oxford American Dictionary*, as a noun meaning "food item," or an adjective meaning "fit to be eaten," which is generic for the core characteristic of Edible Arrangements' products.  Moreover, the term has been used by multiple others to identify edible fruit arrangements, including as part of others' brand names, since well before Edible Arrangements began doing business.  Nevertheless, in 2012, Edible Arrangements applied to register the word "Edible" alone for a food item, *i.e.* an item fit to be eaten – fruit arrangements. It wrongfully obtained Registration No. 4,319,940 for this generic term and has subsequently misused the Registration to claim that others cannot use "Edible" in connection with identifying or describing edible fruit arrangements.  Registration No. 4,319,940 is void and invalid on grounds of genericism.

72.    In seeking the "Edible" registration, Edible Arrangements represented to the USPTO in a sworn declaration that:

> no other person [had] the right to use the mark in commerce on or
> in connection with the goods/services in the application.  The
> signatory believes that to the best of the signatory's knowledge and
> belief, no other person has the right to use the mark in commerce,
> either in the identical form, or in such near resemblance as to be
> likely, when used on or in connection with the goods/services of
> such other person, to cause confusion or mistake, or to deceive.

This statement was false and Edible Arrangements knew it was false because Edible Arrangements knew of other longstanding users of similar marks, including Incredibly Edible Delites and another company that had used "Edible" since the 1980s, Incredible Edibles.  By failing to disclose the other users of "Edible" marks, Edible Arrangements violated the duty of candor it owed to the USPTO, and the registration is void on this ground as well.

19

73.     The term "Edible Arrangements" is also generic, as made clear by Edible Arrangements' own judicial admission in Paragraph 2 of its Amended Complaint in reference to its products that "These products are known generally as EDIBLE ARRANGEMENTS" and its generic usage in its own marketing, and as further made clear by numerous third party generic uses in reference to fruit arrangements, such as "Make your own edible arrangement" and "How to make edible fruit arrangements." The composite merely names what the thing is, *i.e.* an arrangement of edibles. Meaning nothing more than the sum of its parts, the phrase has been generically used to identify an arrangement of edibles since well prior to Edible Arrangements' adoption of the phrase.

74.     Notwithstanding that the term "Edible Arrangements" is generic, in 2000, Edible Arrangements applied to register the term on the Supplemental Register and was able to obtain Registration No. 2,356,362 for it. This registration is void on grounds of genericism.

75.     In 2004, Edible Arrangements filed two more applications to register "Edible Arrangements" as a mark, one for the words alone and one with a design. The USPTO initially refused registration of both, stating in part

> the fact an applicant may be the first and sole user of a merely
> descriptive or generic [term] does not justify registration where the
> evidence shows the term is merely descriptive of the identified
> goods and/or services.

Indeed, the USPTO pointed out that Edible Arrangements itself used the term generically in its marketing, quoting Edible Arrangements' statement on its website that "Edible Arrangements are colorful gift bouquets that you can eat."

76.     Following this refusal, in order to obtain both registrations, Edible Arrangements submitted sworn declarations to the USPTO that it had made substantially exclusive use of

20

"Edible Arrangements" for the past five years.  This statement was false and known by Edible

Arrangements to be false because of its own and others' generic usage.  The statement was made

with the intent to defraud the USPTO, and it induced the USPTO to issue registrations.  The

statement was material in that, but for the false statements, the registrations would not have

issued as they did.  In addition, because the term was generic, the registration for the words alone

should not have issued at all, and the registration for the words plus design should only have

issued with a disclaimer of the words.

77.     In 2009, Edible Arrangements again filed two more applications to register

"Edible Arrangements" marks for food items.  As before, Edible Arrangements obtained

registrations by making the sworn misrepresentation that it had substantially exclusive use of the

term in the five preceding years, even though it knew the statement was untrue.  As before,

Edible Arrangements made the sworn statement with the intent to defraud the USPTO.  As

before, the representations were material and induced the USPTO to issue registrations that it

would not have issued but for the misrepresentations.  Accordingly, Registration Nos. 3,844,160

and 3,844,161 were obtained as a result of fraud.

78.     Therefore, Trademark Registration Nos. 2,934,715; 3,141,566; 3,844,160; and

3,844,161 for "Edible Arrangements" marks are void on grounds of having been fraudulently

obtained, and in addition, Registration Nos. 2,356,362, 2,934,715, and 3,844,160 are void on

grounds of genericism.

### G.  Edible Arrangements' Other Improper Applications to Register Marks

79.     Edible Arrangements has recently sought to remove more generic terms from

competitors' use and to obtain more improper registrations.  For example, in 2014, Edible

Arrangements filed applications with the USPTO to register both the term "Fruit Arrangement"

and the term "Dipped Fruit."  The USPTO refused registration of both claimed marks on grounds that neither was protectable as a trademark.  Edible Arrangements therefore abandoned its efforts to register those terms; however, although it has repeatedly been informed by the USPTO it cannot establish exclusive rights in the generic phrase "Fruit Truffles," Edible Arrangements once again applied to register "Fruit Truffles" in December 2014.

80.     In addition, Edible Arrangements has applied to the USPTO to register what it has called in this case the "six petal daisy design," in Application Serial No. 86,388,189.  Aside from being functional, the design has long been used by multiple others in the industry, and Edible Arrangements does not have exclusive rights in it.  Accordingly, Edible Arrangements is not entitled to registration of the design.

81.     Edible Arrangements also applied to register the mark "The Original Fresh Fruit Bouquet," Application Serial No. 85/795,632.  Since other companies started offering edible fresh fruit bouquets long before Edible Arrangements, it does not offer the original fresh fruit bouquet.  This claimed trademark is therefore deceptively misdescriptive, and registration of it would be invalid under 15 U.S.C. § 1052(e)(3).

H.   Edible Arrangements' Claims to Trademark Rights in the Terms "Bouquet," "Edible," "Edible Arrangements," and in the "Daisy Design" Are Objectively Baseless

82.     Edible Arrangements' actions in asserting trademark rights in generic terms and in a widely used design, and its assertions that others cannot use generic or descriptive terms to describe their products, including the trademark claims asserted against 1-800-Flowers and others and the threats to bring legal action against even more competitors, are and have been objectively baseless.

22

83. Edible Arrangements has asserted exclusive rights in the generic terms "Bouquet," "Edible," and "Edible Arrangements" and other generic or highly descriptive terms and has claimed its registrations prevent others from using these terms, as well as the generic or descriptive phrase "edible fruit arrangements," knowing full well that it had no such rights under trademark law.

84. Edible Arrangements clearly knows and knew at all relevant times that it lacks the ability to claim trademark rights in the generic terms, given its numerous admissions made to the USPTO and in legal proceedings, admonitions to it by the USPTO, its own generic use and widespread third party use of the terms, and common dictionary definitions of the terms. Edible Arrangements clearly knows also that, even if it were to establish trademark rights in certain terms, others are entitled as a matter of law to make descriptive use of the terms.

I. Edible Arrangements Has Asserted Objectively Baseless Trademark Claims and Lawsuits against 1-800-Flowers and Others to Interfere with Its Competitors' Businesses and Reduce Competition from Other Edible Fruit Bouquet Products.

85. Even though Edible Arrangements has known it has no valid grounds to assert trademark rights to prevent competitors from using the terms "Bouquet," "Edible," and "Edible Fruit Arrangements" to identify or describe edible fruit bouquets, Edible Arrangements nonetheless has claimed such rights, and engaged in a pattern of baseless efforts to assert trademark rights by threatening to bring and bringing legal actions to prevent competitors from using these terms that they need to use to identify their edible fruit arrangements and thus compete effectively against Edible Arrangements.

86. Edible Arrangements has engaged in a pattern of asserting its objectively baseless trademark claims without regard for whether the claims had any merit and despite the fact that the claims lack objective merit. Edible Arrangements has taken such actions to enforce specious

23

claims not with any hope that it would succeed in litigation on the merits, but rather solely to disrupt and interfere with its competitors' businesses and thereby insulate itself from competition.

87.     Edible Arrangements filed this lawsuit regardless of the fact that, in filings with the USPTO, it affirmatively disclaimed on multiple occasions any proprietary rights in or to the term "Bouquet" and regardless of the fact that it has used the terms "Edible" and "Edible Arrangements" generically and knows they are generic to identify edible fruit arrangements and that multiple third parties have used the terms generically.

88.     Edible Arrangements' anticompetitive conduct in asserting exclusive rights in generic terms and in fraudulently obtaining trademark registrations has interfered with and, unless enjoined, will continue to interfere with competitors' businesses.  This has reduced competition that otherwise would have existed in the relevant market and submarket for edible fruit arrangements.

89.     Because Edible Arrangements has asserted fraudulently obtained registrations and has improperly demanded that competitors cease using common generic terms to identify the products that they offer in competition with Edible Arrangements, competitors have had more difficulties communicating basic information about competing products to consumers.

90.     This conduct impedes competitors from effectively comparing their products to Edible Arrangements' products or identifying and describing their products in a way that would readily allow consumers to know what competing products represent reasonable economic alternatives.  In other words, Edible Arrangements' anticompetitive activities have reduced the effectiveness and efficiencies of competitors' promotional efforts and their related efforts to inform the consuming public about alternatives available in the relevant market and submarket.

24

US2008 6303434 13

91.     Some competitors have capitulated to Edible Arrangements' improper threats that they not use generic terms over which Edible Arrangements holds no legitimate or enforceable trademark rights.  These competitors have made the rational business decision not to incur the significant economic costs associated with fighting Edible Arrangements' objectively baseless claims.   Edible Arrangements' threats to bring nuisance suits have created enough disincentive that these competitors have been forced to succumb to Edible Arrangements' threats, notwithstanding the adverse effect that doing so would have on consumers and the competitors' businesses.

92.     Moreover, by using such forceful means as its current lawsuit to attack 1-800-Flowers for using common, generic terms, Edible Arrangements is sending a message to all competitors that Edible Arrangements will take excessive and objectively baseless actions to ensure that anyone who uses the generic terms to compete against Edible Arrangements will face a thicket of legal hurdles so significant as to make resistance unprofitable or at least highly costly.

93.     Indeed, Edible Arrangements' lawsuit against 1-800-Flowers serves as an example to all actual and potential competitors identifying or describing their products as "Bouquets," "Edibles," or "Edible Fruit Arrangements" that Edible Arrangements will take them to court, even though Edible Arrangements has admitted that it has no enforceable trademark rights in the term "Bouquet" and Edible Arrangements knows or should know that it has no enforceable trademark rights in the other terms.  In this regard, Edible Arrangements' lawsuit against 1-800-Flowers and threats against others have already chilled competition in the relevant market and relevant submarket.

25

94.     In addition, the costs that Edible Arrangements has imposed on 1-800-Flowers and others by compelling them to defend against objectively baseless legal claims (and threats to bring objectively baseless legal claims) has substantially increased 1-800-Flowers' costs and other competitors' costs.

95.     The increase comes from substantial litigation expense associated with defending against Edible Arrangements' objectively baseless claim or from having to increase spending on educating the consumer about competitive products because of an inability to use common generic or descriptive terms for one's products.

96.     By increasing its rivals' costs, Edible Arrangements has insulated itself from more aggressive and robust competition that otherwise would exist if Edible Arrangements had not waged such an aggressive campaign to enforce non-existent trademark rights.

97.     Accordingly, Edible Arrangements' objectively baseless lawsuit against 1-800-Flowers has interfered not only with 1-800-Flowers' business, but also with 1-800-Flowers' ability to compete – and other competitors' abilities to compete -- against Edible Arrangements in the relevant market and the relevant submarket.

J.   Edible Arrangements' Actions Have Improperly Injured and Will Improperly Injure Competition

98.     Edible Arrangements' prior actions before the USPTO coupled with this lawsuit and claims against others are designed as a campaign to suppress competition in multiple ways.

99.      First, Edible Arrangements has asserted frivolous trademark claims and/or threatened baseless lawsuits against small, independent distributors that comprise the network used and relied on by 800-Flowers.  800-Flowers relies on small, independent local distributors in its BloomNet network ("1-800-Flowers network") to fulfill orders for edible fruit bouquets.

26

100.    Edible Arrangements' complaint and lawsuit have been publicized and reported in various publications such as www.newsday.com and www.law360.com.

101.    By filing this suit and particularly by naming the Delaneys individually as Defendants, Edible Arrangements intends to deter distributors from participating in 1-800-Flowers' network for the production and delivery of edible fruit bouquets.

102.    These distributors play an indispensable role in 1-800-Flowers' network.  Without weaving together a patchwork of local distributors, 1-800-Flowers and other competitors would not be able to compete against Edible Arrangements in the national market for online sales of edible fruit bouquets or the out-of-area submarket.

103.    Most small distributors that participate in 1-800-Flowers' network cannot bear the legal and other costs needed to defend and litigate against Edible Arrangements' objectively baseless threats, legal claims, and lawsuits.

104.    These distributors will fear and avoid participating in 1-800-Flowers' network because to participate in the network to produce and deliver edible fruit bouquets requires an investment of time, money, and effort that distributors would not be willing to undertake in the face of expensive potential litigation, baseless as it may be.  Indeed, several small distributors have expressed reluctance to participate in the 1-800-Flowers network in light of this lawsuit. The lawsuit, therefore, requires 1-800-Flowers to expend more resources to recruit and retain distributors.  Reluctance of distributors to participate will make it very difficult, if not impossible, for 1-800-Flowers and others to compete effectively against Edible Arrangements in the national market for online sales of edible fruit bouquets.

27

US2008 6303434 13

105.    Unless enjoined, Edible Arrangements' anticompetitive acts will make it increasingly difficult for 1-800-Flowers to fulfill online orders for edible fruit bouquets consistently on a national scale.

106.    Second, the significant additional costs that Edible Arrangements has forced on 1-800-Flowers and other competitors have prevented them from competing more robustly against Edible Arrangements.  Competitors have been impeded from competing more vigorously because they have faced a higher cost structure than they otherwise would have faced and/or they have been forced to divert money to litigation defense that could have been used to make their products more competitive.

107.    Thus, the substantial incremental costs that Edible Arrangements has imposed on 1-800-Flowers by asserting frivolous trademark claims and bringing an objectively baseless legal action in federal court against 1-800-Flowers, a significant competitive threat to Edible Arrangements,  has given Edible Arrangements the ability to charge higher prices than it otherwise would be able to charge.

108.    Third, Edible Arrangements has used its objectively baseless trademark claims and lawsuit against 1-800-Flowers to send a message to other actual and/or potential competitors in the relevant market and submarket.  That message is that, if these other competitors use generic or descriptive terms long common in the industry to identify or describe their products, then Edible Arrangements will aggressively attack them and impose significant costs on them.

109.    1-800-Flowers is the primary competitive threat to Edible Arrangements in the relevant market and submarket.  Many other actual and potential competitors do not have the financial resources to withstand and defend against the same type of objectively baseless claims as those asserted against 1-800-Flowers.

28

110.    By attacking a significant competitor like 1-800-Flowers, Edible Arrangements is assured that other competitors in the industry will learn about Edible Arrangements' objectively baseless claims and know that Edible Arrangements will go to excessive lengths to impose costs on its rivals.

111.    By attacking 1-800-Flowers, Edible Arrangements has thus chilled and dampened competition not only from 1-800-Flowers, but also from other competitors.  Edible Arrangements' lawsuit against 1-800-Flowers puts other competitors in a position in which they face a dilemma with no good choices.

112.    Competitors can continue to use common generic and descriptive terms, which they have every right to do.  But they then face the risk that Edible Arrangements will assert equally baseless trademark claims against them and impose significant incremental costs on them.

113.    Alternatively, these other competitors can avoid using common generic terms to identify and describe their edible fruit bouquets.  This, however, will make it difficult, if not impossible, to communicate to consumers in a cost-effective manner the most basic information about their competing products -- such as what the product is.

114.    By bullying competitors into not using generic terms that are and should be freely available to identify the competitors' products, Edible Arrangements has prevented competitors from conveying useful information to consumers that will enable consumers to more easily identify alternatives to Edible Arrangements' products.

US2008 6303434 13

K.  Edible Arrangements' Anticompetitive Conduct Has Injured 1-800-Flowers in Its Business and Property and Harmed Competition.

115.    Edible Arrangements' improper tactics and objectively baseless lawsuit and threatened legal claims have inflicted injury on 1-800-Flowers and reduced competition in the relevant market and relevant submarket for the online sale of edible fruit bouquets.

116.    Edible Arrangements' anticompetitive acts have imposed significant additional costs on 1-800-Flowers, which have hampered 1-800-Flowers' abilities to compete as aggressively as it otherwise could have and would have in the absence of such unjustifiable costs.

117.    Edible Arrangements' conduct therefore has not only injured 1-800-Flowers, but also consumers and competition generally in the relevant market and submarket.

L.  Edible Arrangements' Conduct Has Enabled it to Approach, Acquire, or Maintain Monopoly Power.

118.    Edible Arrangements' dominance and its anticompetitive practices have enabled Edible Arrangements to acquire market power, including monopoly power, or at least will enable Edible Arrangements to acquire monopoly power if its conduct remains unchecked.

119.    Edible Arrangements has the ability to control prices in the relevant market and/or the relevant submarket.  It has been able to control prices in the market at least in part through raising its competitors' costs by forcing them to defend against frivolous legal claims, making it more difficult to establish, maintain, and expand competing order-fulfillment networks, and by increasing the expense and burden to promote competing products and to distribute useful information to consumers about competing products.  This has insulated Edible Arrangements from more robust competition and has subjected consumers to higher costs in connection with the online sale of edible fruit arrangements.

30

120.     Edible Arrangements' market dominance coupled with its anticompetitive acts have enabled Edible Arrangements to exclude competitors in whole or in part from the relevant market and/or the relevant submarket.  More competitors and more products would have either entered the relevant market or expanded their market reach if the market had been free from both Edible Arrangements' objectively baseless legal claims and threats and the barriers to entry and expansion that resulted therefrom.  Competitors have been hindered and prevented from taking larger share from Edible Arrangements in the market for online sales of edible fruit bouquets and the out-of-area submarket.

121.     Edible Arrangements' conduct has prevented some actual and potential competitors from entering the market or expanding their operations in the market.  The significant costs that Edible Arrangements has imposed on competitors and the risk that Edible Arrangements will impose significant incremental costs on competitors have reduced and will reduce competitors' incentives to invest the time, money, and effort required to compete or expand operations in the relevant market and/or submarket.

122.     Through its objectively baseless campaign to deny competitors the free and unfettered access to generic and descriptive terms needed to compete effectively in the market, Edible Arrangements has acquired or maintained monopoly power.  It has acquired the ability to control not only its prices but competitors' prices for online sales of edible fruit bouquets by imposing unjustifiable costs on its competitors and raising their cost structure.

123.     Alternatively, to the extent Edible Arrangements has not yet acquired monopoly power, Edible Arrangements has achieved a sufficiently high share of the relevant market and submarket that it is dangerously close to achieving monopoly power in the relevant market and/or submarket.

31

124.     Edible Arrangements' anticompetitive conduct will insulate Edible Arrangements

from robust price competition and competitors' promotional activities.  This has enabled and will

enable Edible Arrangements to maintain higher prices for online sales of edible fruit bouquets

and to exclude competitors in whole or in part from competing effectively against Edible

Arrangements in the relevant market or submarket.  Edible Arrangements' conduct thus will

enable it to obtain monopoly power, to the extent it has not already done so.

<u>**COUNT ONE**</u>
<u>Monopolization in Violation of</u>
<u>Sherman Act Section 2, 15 U.S.C. § 2</u>

125.     1-800-Flowers repeats and re-alleges the allegations contained in paragraphs 1

through 124 above as if fully set forth herein.

126.     Edible Arrangements has unlawfully monopolized the edible fruit arrangement

market and the out-of-area submarket in violation of the Sherman Act 15 U.S.C. § 2.

127.     Edible Arrangements committed fraud on the USPTO in obtaining certain

trademark registrations for phrases containing the terms "Bouquet" and "Edible Arrangements"

and in obtaining a registration for the word "Edible."

128.     Edible Arrangements knows that it has no protectable trademark rights in generic

and/or otherwise unprotectable terms and designs used by 1-800-Flowers to compete against

Edible Arrangements.

129.     Edible Arrangements has nevertheless threatened to bring objectively baseless

claims, has asserted objectively baseless claims against others, and filed the instant lawsuit, an

objectively baseless trademark infringement action claiming that Edible Arrangements has

protectable trademark rights that enable it to prevent others from using the terms "Edible,"

32

"Bouquet," and "Edible Fruit Arrangements" and from using a functional design long used by others.

130.    Edible Arrangements' trademark claims and its trademark infringement suit against 1-800-Flowers are objectively baseless and have been asserted in bad faith with the purpose of interfering with competitors' businesses and maintaining or acquiring monopoly power and restraining competition in the relevant market and/or submarket.

131.    Edible Arrangements' objectively baseless trademark threats and lawsuits will reduce and injure competition in the relevant market and/or submarket.

132.    Edible Arrangements knows that it has no objectively reasonable prospects of prevailing on the merits of its lawsuit or its threatened trademark claims, that the process of commencing the lawsuit and threatening to assert other lawsuits would stifle competition, and that the suits would cause damage to 1-800-Flowers and other actual and potential competitors, thereby reducing or eliminating competition in the relevant market and/or submarket.

133.    Edible Arrangements has monopoly power in both the relevant market and submarket.  And Edible Arrangements has the ability to control price and exclude competitors in the relevant market and submarket.

134.    Edible Arrangements has no legitimate business justification for its conduct.

135.    Unless enjoined, Edible Arrangements will continue to reduce and eliminate competition and thereby continue to monopolize the relevant market and submarket.

136.    With no other choices available, consumers will have to accept the increased prices and/or lower quality, variety, and delivery options provided by Edible Arrangements in the online market for edible fruit bouquets and in the out-of-area submarket.

US2008 6303434 13

137.    This suppression of competition has caused and will cause great harm to consumers in the online market for edible fruit bouquets and the out-of-area submarket who are, and will be, deprived of the benefits of robust competition and choices.

138.    1-800-Flowers has suffered antitrust injury as a direct result of Edible Arrangements' monopolization of the relevant market for online sales of edible fruit bouquets and the out-of-area submarket.  The injury is direct and substantial, and includes, but is not limited to, loss of sales and profits, attorneys' fees and other costs spent defending against Edible Arrangements' objectively baseless claims and lawsuit, impaired ability for growth, loss of business reputation, reduction in value of business, and other increased costs to market, sell, produce, and deliver edible fruit arrangements.

**COUNT TWO**
Attempted Monopolization in Violation of
Sherman Act Section 2, 15 U.S.C. § 2

139.    1-800-Flowers repeats and re-alleges the allegations contained in paragraphs 1 through 124 above as if fully set forth herein.

140.    Edible Arrangements has unlawfully attempted to monopolize the edible fruit arrangements market and the out-of-area submarket in violation of the Sherman Act 15 U.S.C. § 2.

141.    Edible Arrangements knows that it has no protectable trademark rights in generic and otherwise unprotectable terms and designs used by 1-800-Flowers to compete against Edible Arrangements.

142.    Moreover, Edible Arrangements committed fraud on the USPTO in securing certain trademark registrations.

34

143.    Edible Arrangements has threatened to bring objectively baseless lawsuits, has asserted objectively baseless claims against others, and filed, in the instant case, an objectively baseless trademark infringement action based on generic terms and fraudulently obtained registrations claiming that it has protectable trademark rights that enable it to prevent others from using "Edible," "Bouquet," and "Edible Fruit Arrangements" and a functional design long used by others.

144.    Edible Arrangements' trademark claims and its trademark infringement suit against 1-800-Flowers are objectively baseless and have been asserted in bad faith with the purpose of interfering with a competitor's business and maintaining or acquiring monopoly power and restraining competition in the relevant market and/or submarket.

145.    Edible Arrangements' objectively baseless trademark threats and lawsuits will reduce and impair competition in the relevant market and/or submarket.

146.    Edible Arrangements knows that it has no objectively reasonable prospects of prevailing on the merits of its lawsuit or its threatened trademark claims, that the process of commencing the lawsuit and threatening to assert other lawsuits would stifle competition, and that the suit would cause damage to 1-800-Flowers and other actual and/or potential competitors, thereby reducing or eliminating competition in the relevant market and/or submarket.

147.    Edible Arrangements is dangerously close to acquiring monopoly power in both the relevant market and submarket.  Edible Arrangements has the ability and/or will acquire the ability to control price and exclude competitors in the relevant market and submarket.

148.    Through its anticompetitive acts, Edible Arrangements specifically intends to monopolize the relevant market and/or submarket through its actions described above.

149.    Edible Arrangements has no legitimate business justification for its conduct.

35

150.    Edible Arrangements has no objectively reasonable prospects for success in its lawsuit or its threatened trademark claims.  The only logical basis for asserting the lawsuit and threatened claims therefore is to interfere with its competitors' businesses, diminish competition, and acquire market and monopoly power.

151.    Unless enjoined, Edible Arrangements will continue to reduce and eliminate competition and thereby monopolize the relevant market and/or submarket.

152.    With limited choices available, consumers will have to accept the increased prices and/or lower quality, variety, and delivery options provided by Edible Arrangements in the online market for edible fruit bouquets and in the out-of-area submarket.

153.    This suppression of competition has caused and will cause great harm to consumers in the online market for edible fruit bouquets and the out-of-area submarket because they are and will be deprived of the benefits of robust competition and choices.

154.    1-800-Flowers has suffered antitrust injury as a direct result of Edible Arrangements' attempts to monopolize the relevant market for online sales of edible fruit bouquets and the out-of-area submarket.  The injury is direct and substantial, and includes, but is not limited to, loss of sales and profits, attorneys' fees and other costs spent defending against Edible Arrangements' objectively baseless claims and lawsuit, impaired ability for growth, loss of business reputation, reduction in value of business, and other increased costs to market, sell, produce, and deliver edible fruit arrangements.

### COUNT THREE
(Violation of Connecticut General Statutes § 42-110b *et seq*.)

155.    1-800-Flowers repeats and incorporates by reference the allegations contained in the paragraphs 1-124 of this Counterclaim as if fully restated herein.

US2008 6303434 13

156.    Edible Arrangements has engaged in unfair methods of competition in violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statute § 42-110b *et seq*.

157.    Edible Arrangements has asserted non-existent trademark rights in order to prevent competitors from using common generic or otherwise unprotectable terms and designs and to interfere with competitors' business.

158.    Edible Arrangements has threatened to bring and has asserted objectively baseless and vexatious  trademark claims and lawsuits against 1-800-Flowers and others.

159.    Edible Arrangements knows and/or should know that its trademark claims and trademark lawsuits described herein have no merit.

160.    Edible Arrangements has committed fraud on the USPTO in prosecuting applications for registration of purported trademarks on which it has based this litigation and claims against 1-800-Flowers and others.

161.    Edible Arrangements' actions in defrauding the USPTO, asserting frivolous trademark claims against competitors, filing objectively baseless lawsuits against 1-800-Flowers and others, and other related acts have injured Edible Arrangements' competitors, as well as competition and consumers in the market for online sales of edible fruit arrangements and the out of area submarket.

162.    Edible Arrangements lacks any legitimate business justification for its conduct.

163.    Edible Arrangements and 1-800-Flowers compete against one another for online sales of edible fruit bouquets. The relationship between Edible Arrangements and 1-800-Flowers is one of competitors.

164.    Edible Arrangements' acts were performed in the conduct of trade or commerce for purposes of Connecticut General Statute § 42-100b *et seq*.

37

US2008 6303434 13

165.     Edible Arrangements' acts that have violated the Connecticut Unfair Trade Practices Act have caused injury and an ascertainable loss to 1-800-Flowers.

166.     Edible Arrangements' acts that have violated the Connecticut Unfair Trade Practices Act have caused unjustified consumer injury.

167.     Edible Arrangements' conduct constitutes an unfair method of competition under the Connecticut Unfair Trade Practices Act, Connecticut General Statute § 42-110b *et seq.*

168.     Edible Arrangements' conduct therefore violates the Connecticut Unfair Trade Practices Act, Connecticut General Statute § 42-110b *et seq.*

169.     1-800-Flowers is transmitting a copy of this Counterclaim to the Attorney General of the State of Connecticut and to the Commissioner of Consumer Protection for the State of Connecticut, as required by Connecticut General Statute § 42-110g(c).

## COUNT FOUR
(Declaratory Judgment, 28 U.S.C. §§ 2201-2202)

170.     1-800-Flowers repeats and incorporates by reference the allegations contained in paragraphs 1-124 of this Counterclaim as if fully restated herein.

171.     Edible Arrangements has alleged in this action that it owns protectable rights in "Edible," "Edible Arrangements," a "six petal daisy" design, and a claimed family of "Bouquet" marks for use in connection with edible fruit arrangements and fruit bouquets.

172.     1-800-Flowers denies that it has infringed any of Edible Arrangements' rights or that its use of terms or designs in any way violates Edible Arrangements' purported rights in these putative marks.

173.     In addition, Edible Arrangements' putative marks are not protectable because

38

a.  Edible Arrangements' putative marks "Edible," and "Edible Arrangements" are generic and therefore cannot serve as marks;

b.  Edible Arrangements' putative six petal daisy design is functional, widely used by others, and therefore cannot serve as a mark;

c.  The term "bouquet" is generic or at best merely highly descriptive with respect to fruit arrangements designed as a bouquet and therefore cannot serve as the basis for a so-called "family" of marks; and

d.  The putative Edible and Edible Arrangements marks and putative marks Berry Chocolate Bouquet, Chocolate Banana Bouquet, Dipped Fruit Bouquet, Berry Bouquet, Breast Cancer Awareness Bouquet, Sweetheart Bouquet, Peanut Butter Bouquet, Fruit Truffles Bouquet, A Birthday Bouquet, Peanut Butter Chocolate Bouquet, Sweet Anniversary Bouquet, Black Cat Bouquet, and Merry Gingerbread Men Bouquet, are generic or at best merely descriptive, because they consist of common descriptive terms for the products at issue, are not inherently distinctive, and Edible Arrangements has failed to establish any secondary meaning in them, such that it cannot claim exclusive rights in them.

174.   In addition, Edible Arrangements is basing certain of its claims on trademark registrations and applications for which it improperly obtained the USPTO's approval.

175.   An actual, immediate, and justiciable controversy between the parties exists over whether Edible Arrangements has any protectable rights in the putative Edible, Edible Arrangements, daisy design, and alleged family of Bouquet marks, and if so, whether 1-800-Flowers is infringing or otherwise violating Edible Arrangements' rights.

176.    1-800-Flowers has been and will continue to be damaged by the persistent uncertainty created by Edible Arrangements' unsubstantiated claims with respect to 1-800-Flowers' legitimate use of such terms and designs.

177.    Accordingly, 1-800-Flowers is entitled to a declaration by this Court that (a) 1-800-Flowers' use of "Fruit Bouquets," "Edible," "Edible Fruit Arrangements," and a six petal pineapple slice design does not infringe, dilute, or otherwise violate Edible Arrangements' purported rights; (b) Edible Arrangements cannot and does not have any protectable trademark rights in the putative marks Edible, Edible Arrangements, six petal daisy design, a "family" of Bouquet marks, or multiple "Bouquet" terms; c) Edible Arrangements is not entitled to obtain registrations on Application Serial Nos. 85/619,454; 85/795,638; 85/795,632; 85/814,687; 85/901,891; 85/904,616; 85/918,912; 85/919,379; 86/138,558; 85/837,831; and 85/837,914 because it improperly obtained the USPTO's approval for those applications; and d) Edible Arrangements is not entitled to obtain a registration on Application Serial No. 86/388,189 because it does not have exclusive rights in the design and the design is functional.  Further, in the event this Court determines that a party is entitled to exclusive rights in the term "Bouquet" with respect to fruit arrangements, 1-800-Flowers is entitled to a declaration by this Court that it has prior rights because of its ownership of the Bouquet of Fruits mark.

## COUNT FIVE
(Cancellation of U.S. Trademark Registrations)

178.    1-800-Flowers repeats and incorporates by reference the allegations contained in paragraphs 1-124 of this Counterclaim as if fully restated herein.

179.    Edible Arrangements has alleged in this action that it owns the U.S. Trademark Registrations set forth in Exhibits A and B hereto and incorporated herein.

US2008 6303434 13

180.    U.S. Trademark Registration Nos. 2,356,362, 2,934,715, 3,141,566, 3,844,160, 3,844,161, and 4,319,940 for the putative marks Edible and Edible Arrangements for use in connection with edible fruit arrangements are invalid and unenforceable because the putative marks are generic and/or the registrations were fraudulently obtained.  Alternatively, the terms are merely descriptive and had not achieved secondary meaning as of the time Edible Arrangements obtained registrations for them on the Principle Register.

181.    U.S. Registration Nos. 3,429,718, 3,503,964, and 4,635,801 for putative "Bouquet" marks are invalid because Edible Arrangements fraudulently obtained them.

182.    U.S. Trademark Registration Nos. 3,296,243, 3,393,667, 3,396,702, 3,429,717, and 3,760,678 for putative "Bouquet" marks for use in connection with edible fruit arrangements are invalid and unenforceable because the terms are generic.

183.    The marks underlying Registration Nos. 3,296,243, 3,393,667, 3,396,702, 3,429,717, 3,464,761, 3,503,964, 3,694,410, 3,750,846, 3,760,678, 3,815,967, 3,853,513, 4,169,485, and 4,322,954 for putative "Bouquet" marks are not inherently distinctive and were not inherently distinctive at the time Edible Arrangements filed applications to register them with the USPTO.  The marks underlying these registrations are merely descriptive of the recited goods because they immediately describe a quality, characteristic, or feature of the recited goods. The marks underlying these registrations had not achieved secondary meaning or acquired distinctiveness among relevant consumers at the time the Registrations were issued by the USPTO.  Therefore, the registrations are invalid.

184.    1-800-Flowers has been and continues to be injured by the existence of the foregoing Registrations and Edible Arrangements' claim of exclusive rights in the putative marks covered by the registrations, as set forth in Edible Arrangements' Second Amended Complaint.

41

185.    Because Edible Arrangements is not entitled to maintain any rights to the putative marks set forth in Exhibits A and B and incorporated herein, including those rights accompanying a federal registration, the Court should issue appropriate orders pursuant to 15 U.S.C. § 1119 directing the Director of the United States Patent and Trademark Office to cancel the U.S. Registration Nos. set forth in Exhibits A and B and incorporated herein.

## COUNT SIX
(Trademark Infringement, 15 U.S.C. § 1114)

186.    1-800-Flowers repeats and incorporates by reference the allegations contained in paragraphs 1-124 of this Counterclaim as if fully restated herein.

187.    1-800-Flowers owns the Bouquet of Fruits mark, U.S. Registration Nos. 3,249,239 and 3,244,359 therefor, and goodwill therein.  The Bouquet of Fruits mark has been continuously used since 1989, long before Edible Arrangements adopted any mark including the word "Bouquet."

188.    As the owner of the mark, 1-800-Flowers is entitled to the prior rights afforded it by virtue of the use and registration of the mark by its predecessor in interest.

189.    In the event the Court determines a party is entitled to exclusive rights in "Bouquet" and that there is a likelihood of confusion between Edible Arrangements' asserted "Bouquet" marks for fruit and 1-800-Flowers use of "Bouquet" terms for fruit, then 1-800-Flowers has rights prior to any claimed rights of Edible Arrangements.  Accordingly, 1-800-Flowers alleges alternatively that Edible Arrangements' continued use and registration of its "Bouquet" marks is a violation of 1-800-Flowers' rights under 15 U.S.C. § 114, in that it is likely to cause confusion as to source or association between Plaintiff and Defendant and/or their respective goods or services, entitling 1-800-Flowers to obtain an injunction against Edible

Arrangements' use of its claimed Bouquet marks and to obtain cancellation of Edible

Arrangements' registrations of Bouquet marks.

## PRAYER FOR RELIEF

WHEREFORE, 1-800-Flowers prays for the following relief:

A.    Entry of an order adjudging and declaring that

    1.    1-800-Flowers' use of "Fruit Bouquets," "Edible," "Edible Fruit

Arrangements," and six petal pineapple slice daisy design does not

infringe Edible Arrangements' putative marks or violate any of Edible

Arrangements' purported rights; and

    2.    Edible Arrangements' putative marks "Edible," "Edible Arrangements,"

six petal "daisy" design, "Berry Chocolate Bouquet," "Chocolate Banana

Bouquet," "Dipped Fruit Bouquet," "Berry Bouquet," "Breast Cancer

Awareness Bouquet," "Sweetheart Bouquet," "Peanut Butter Bouquet,"

"Fruit Truffles Bouquet," "A Birthday Bouquet," "Peanut Butter

Chocolate Bouquet," "Sweet Anniversary Bouquet," "Black Cat

Bouquet," and "Merry Gingerbread Men Bouquet" are not valid or

protectable trademarks.

    3.    Edible Arrangements does not own a "Bouquet" family of marks and does

not have exclusive rights in the word "Bouquet" in connection with edible

fruit arrangements.

    4.    Edible Arrangements is not entitled to obtain federal registrations for the

trademark applications set forth in Exhibit C attached hereto and

incorporated herein.

43

B.  Entry of an order adjudging Edible Arrangements' conduct violates Section 2 of the Sherman Act (15 U.S.C. § 2).

C.  Entry of an order adjudging Edible Arrangements' conduct violates Connecticut General Statutes § 42-110b *et seq*.

D.  In the event the Court determines a party to this action has exclusive rights in "Bouquet" and there is a likelihood of confusion between the parties' respective uses of "Bouquet" terms, entry of an order adjudging and declaring that 1-800-Flowers has prior rights ;

E.  Entry of an order cancelling in their entirety U.S. Trademark Registration Numbers set forth in Exhibits A and B hereto and incorporated herein;

F.  Entry of a permanent injunction enjoining Edible Arrangements, its officers, agents, distributors, employees and all those acting in concert with it from:

1.  interfering in any manner with 1-800-Flowers' use of Fruit Bouquets, other Bouquet terms, Edible, Edible Fruit Arrangements, or a six petal pineapple slice design in relation to 1-800-Flowers' products;

2.  the filing or prosecution of any lawsuit or administrative proceeding or legal action seeking to prevent the use of terms required to identify or describe fruit arrangements, including fruit bouquet, edible, and edible fruit arrangements, or the use of a six petal pineapple slice design;

3.  the filing or prosecution of any other lawsuit or administrative proceeding or legal action without any objectively reasonable support for the facts alleged or legal position taken by Edible Arrangements or those in privity with it;

44

4.      in the event of a finding of likelihood of confusion between the parties'
respective uses of "Bouquet," entry of an injunction against Edible
Arrangements, its officers, agents, distributors, employees, and all those
acting in concert with it from using its claimed Bouquet marks; and

5.      engaging in any further acts without any legitimate business justification
to purposefully obtain or maintain monopoly or market power in any
relevant market for the sale of edible fruit bouquets.

G.      Awarding 1-800-Flowers three times the amount of damages to be determined at
trial;

H.      An award to 1-800-Flowers of its attorneys' fees and costs incurred in connection
with this action

I.      And award of prejudgment and post-judgment interest; and

J.      Such other further relief to which 1-800-Flowers may be entitled.

Respectfully submitted,

/s/ Judith A. Powell
Judith A. Powell (admitted *pro hac vice*; phv07191)
James W. Faris Jr. (application for admission *pro
hac vice* to be filed)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
JPowell@KilpatrickTownsend.com
JFaris@KilpatrickTownsend.com

45

Lawrence G. Rosenthal, Esq. (ct04117)
Denise Purpura, Esq. (ct27772)
ROGIN NASSAU LLC
185 Asylum Street
City Place I, 22nd Floor
Hartford, CT 06103
Telephone:  (860) 256-6300
Facsimile:  (860) 278-2179
LRosenthal@roginlaw.com
DPurpura@roginlaw.com

*Attorneys for Defendants/Counterclaim-Plaintiffs
1-800-Flowers.com, Inc. and 800-Flowers, Inc.*

Of Counsel:

Peter M. Boyle, Esq.
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW
Suite 900
Washington, DC  20005-2018
Phone:  (202) 508-5831
Fax:  (202) 585-0057
PBoyle@KilpatrickTownsend.com

46

**EXHIBIT A**

| MARK | REGISTRATION NO. | DATE REGISTERED |
|---|---|---|
| BERRY CHOCOLATE BOUQUET | Reg. No. 3,296,243 | Registered 09/25/07 |
| CHOCOLATE BANANA BOUQUET | Reg. No. 3,393,667 | Registered 03/04/08 |
| DIPPED FRUIT BOUQUET | Reg. No. 3,396,702 | Registered 03/11/08 |
| BERRY BOUQUET | Reg. No. 3,429,717 | Registered 05/20/08 |
| BERRY TREE BOUQUET | Reg. No. 3,429,718 | Registered 05/20/08 |
| BREAST CANCER AWARENESS BOUQUET | Reg. No. 3,464,761 | Registered 07/08/08 |
| SWEETHEART BOUQUET | Reg. No. 3,503,964 | Registered 09/23/08 |
| PEANUT BUTTER BOUQUET | Reg. No. 3,694,410 | Registered 10/06/09 |
| FRUIT TRUFFLES BOUQUET | Reg. No. 3,750,846 | Registered 02/16/10 |
| A BIRTHDAY BOUQUET | Reg. No. 3,760,678 | Registered 03/16/10 |
| PEANUT BUTTER CHOCOLATE BOUQUET | Reg. No. 3,815,967 | Registered 07/06/10 |
| SWEET ANNIVERSARY BOUQUET | Reg. No. 3,853,513 | Registered 09/28/10 |
| BLACK CAT BOUQUET | Reg. No. 4,169,485 | Registered 07/03/12 |
| MERRY GINGERBREAD MEN BOUQUET | Reg. No. 4,322,954 | Registered 04/23/13 |
| JOYOUS BOUQUET | Reg. No. 4,635,801 | Registered 11/11/14 |

US2008 6303434 13

**EXHIBIT B**

| MARK | REGISTRATION NO. | DATE REGISTERED |
|---|---|---|
| EDIBLE ARRANGEMENTS | 2,356,362 | 06/06/00 |
| EDIBLE ARRANGEMENTS | 2,934,715 | 03/22/05 |
| | 3,141,566 | 09/12/06 |
| EDIBLE ARRANGEMENTS | 3,844,160 | 09/07/10 |
| | 3,844,161 | 09/07/10 |
| EDIBLE | 4,319,940 | 04/16/13 |

48

US2008 6303434 13

**EXHIBIT C**

| MARK | SERIAL NO. | DATE FILED |
|---|---|---|
| HOLIDAY HOUSE BOUQUET | 85/619,454 | 05/08/12 |
| THE LEADERS IN FRESH FRUIT BOUQUETS | 85/795,638 | 12/05/12 |
| THE ORIGINAL FRESH FRUIT BOUQUET | 85/795,632 | 12/05/12 |
| VALENTINE'S SWEETIE BOUQUET | 85/814,687 | 01/03/13 |
| JUST BECAUSE BOUQUET | 85/837,831 | 01/31/13 |
| CHEER ME UP BOUQUET | 85/837,914 | 01/31/13 |
| BOOTASTIC BOUQUET | 85/901,891 | 04/11/13 |
| AUTUMN SWIZZLE BOUQUET | 85/904,616 | 04/15/13 |
| REINDEER SLEIGH RIDE BOUQUET | 85/918,912 | 04/30/13 |
| WATERMELON KIWI SUMMER BOUQUET | 85/919,379 | 04/30/13 |
| HOLIDAY STAR BOUQUET | 86/138,558 | 12/09/13 |
| SIX PETAL DESIGN | 86/388,189 | 09/08/14 |

US2008 6303434 13

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties of record by operation of the Court's electronic filing system or by mail at the addresses shown below to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      Glenn M. Cunningham (ct09995)
      Patrick M. Fahey (ct13862)
      Susan S. Murphy (ct25321)
      SHIPMAN & GOODWIN LLP
      One Construction Plaza
      Hartford, CT 06103-2819
      Phone: (860)251-5000
      Fax: (860)251-5600
      Emails: gcunningham@goodwin.com
             pfahey@goodwin.com
             smurphy2@goodwin.com

                    /s/ Judith A. Powell
                    Judith A. Powell, Esq.

50

US2008 6303434 13