UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDIBLE ARRANGEMENTS INT'L, LLC, | : | No. 3:14-cv-01744 (MPS) |
| EDIBLE ARRANGEMENTS, LLC, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| 1-800-FLOWERS.COM, INC., | : | |
| 800-FLOWERS, INC., | : | |
| JUNE V. DELANEY AND DAVID DELANEY, | : | |
| d/b/a FRUIT BOUQUETS STATEN ISLAND, | : | |
| Defendants. | : | July 30, 2015 |

_____

**MEMORANDUM OF DECISION**

**I.    Introduction**

Plaintiffs Edible Arrangements International, LLC, and Edible Arrangements, LLC

(collectively, "EA"), are suing defendants June and David Delaney ("the Delaneys"),  among

others, for trademark infringement, alleging that the Delaneys have knowingly utilized EA's

trademarks on their website to deceive customers into believing they are buying authentic EA

fruit arrangement products. The Delaneys move to dismiss the claims against them on the ground

that this Court lacks personal jurisdiction. As set forth below, the Court finds insufficient

contacts to satisfy the requirements of Connecticut's long-arm statute and therefore grants the

motion to dismiss for lack of personal jurisdiction.

**II.    Background**

The following facts are drawn from the complaint and the parties' affidavits and other

submissions on the motion to dismiss, which may be considered at this stage in determining

whether personal jurisdiction exists. *See infra* Part III.

EA, whose principal place of business in in Connecticut, owns and operates a business specializing in the marketing and sale of fresh fruit designed as flower arrangements. Second Am. Compl. ¶ 2. The Delaneys are residents of Staten Island, New York. *Id.* ¶ 15. June Delaney formed and is the principal of June's Page Avenue Florist, Inc. (which is not a party to this suit)[1], doing business as "Petals on Page," a single-location flower shop in Staten Island. Second Decl. of June Delaney (ECF No. 72-1) ¶¶ 7-10; First Decl. of June Delaney (ECF No. 37-2) ¶¶ 4, 6. June's Page Avenue Florist, operates a website from New York named www.fruitbouquetstatenisland.com, which is hosted on servers located in Virginia. First Decl. of June Delaney ¶ 22. EA's complaint includes a printout of the website depicting buttons for "Cart Contents," "Checkout," and "My Account," suggesting that it is interactive and permits customers to submit orders online. Second Am. Compl. ¶ 176.

In October 2012, either the Delaneys or their business entered into an order fulfillment agreement with BloomNet, Inc. ("BloomNet"), a wire service for 1-800-Flowers (a codefendant that has not joined this motion to dismiss), through which certain orders placed on the 1-800-Flowers website could be forwarded to the Delaneys in Staten Island for fulfillment, with profits divided equally between BloomNet and the Delaneys.  *See* Second Decl. of June Delaney ¶ 7; Decl. of Rakesh Vatti ¶ 4; Decl. of Cheryl Steckel ¶¶ 4-8; *see supra* note 1. The Delaneys claim that no orders from Connecticut residents were placed directly through their own website (www.fruitbouquetstatenisland.com), but that over the course of two years, BloomNet forwarded seven bouquet orders placed by Connecticut residents on the 1-800-Flowers website to the Delaneys, who then arranged and delivered the bouquets to recipients in New York.  *Id.* The total

---

[1] The parties dispute whether the Delaneys can be held personally liable for actions taken on behalf of the corporation, but the Court need not address this issue. As explained below, even if all of those actions were attributed to the Delaneys personally, the Court would lack personal jurisdiction over them.

merchandise amount for the seven orders was $436.91, of which the Delaneys received $267.12 for their services. Decl. of Cheryl Steckel ¶ 8.

EA claims that the Delaneys, doing business as "Fruit Bouquets Staten Island," intentionally infringed EA trademarks on their website (www.fruitbouquetstatenisland.com).[2] Second Am. Compl. ¶¶ 15, 23. Specifically, EA alleges that the Delaneys advertised and offered for sale edible fruit arrangements from their flower shop through the website, using the EA mark and the "confusingly similar 'Edible Fruit Arrangements' designation," both on the website itself and embedded within the website's metadata, a hidden code that is programmed to be associated with the website's homepage. *Id*. ¶¶ 132, 165, 176-77. EA further alleges that the use of the "Bouquet" and "Fruit Bouquet" designations in connection with the "prominently displayed six petal daisy," which is "confusingly similar to [EA's] Six Petal Design," was "calculated to confuse customers into believing that there is an association between Fruit Bouquets Staten Island and Edible Arrangements." *Id*. ¶¶ 165, 178. EA also characterizes the Delaneys as part of a network of "distributors" for 1-800-Flowers that have infringed EA's marks through the "BloomNet program." *Id*. ¶¶ 15, 162-63, 171, 175, 181, 184.

EA brings claims against the Delaneys for trademark infringement, false designation of origin, trademark dilution, and unfair competition under both common law and the Lanham Act. *Id*. ¶¶ 195-204, 215-218.

### III.    Legal Standard

---

[2] The Court treats the allegations against Fruit Bouquets Staten Island as allegations against the Delaneys. *See Bauer v. Pounds*, 762 A.2d 499, 503 (Conn. App. 2000) ("It appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity . . . [and that] [t]he designation [d/b/a] . . . is merely descriptive of the person or corporation who does business under some other name.") (quotation marks omitted); *Care Envtl. Corp. v. M2 Technologies, Inc.*, No. CV-05-1600 (CPS), 2006 WL 148913, at *6 (E.D.N.Y. Jan. 18, 2006).

"[The] plaintiff bears the burden of showing the court has jurisdiction over the defendant," and the "burden is apportioned based on how far the case has progressed." *Corning Inc. v. Shin Etsu Quartz Products Co.*, 242 F.3d 364, at *2 (2d Cir. 2000). "If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). "The district court has considerable procedural leeway in deciding 12(b)(2) motions, and it may accept affidavits if it so chooses." *Corning*, 242 F.3d 364, at*2 (quotation marks omitted).  "[W]here . . . the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction." *Id.*  "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). "First, we apply the forum state's long-arm statute." *Id.* "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.* at 164. Because the Court finds that EA has failed to establish a prima facie case of personal jurisdiction over the Delaneys under Connecticut's long-arm statute, the Court need not address the issue of due process.

**IV.     Discussion**

4

EA argues that the Delaneys are subject to jurisdiction in Connecticut under subsection 52-59b(a)(3) of Connecticut's long-arm statute, which grants jurisdiction over a nonresident individual who

> in person or through an agent . . . (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such a person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Conn. Gen. Stat. § 52-59b(a)(3). Even accepting EA's allegations as true and resolving all doubts in its favor, the Court finds that  EA has made an insufficient prima facie showing that the Delaneys are subject to jurisdiction under Conn. Gen. Stat. § 52-59b(a)(3).

As to the threshold inquiry under § 52-59b(a)(3), which is whether the cause of action arises from a tortious act causing injury within Connecticut, EA has made a prima facie showing. The alleged injuries include both the lost sales caused by BloomNet's operation—the Delaneys concede that seven of the BloomNet orders that they fulfilled came from Connecticut residents— and the confusion of potential customers who could have viewed www.fruitboquetstatenisland.com, which was accessible in Connecticut.[3] *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008) ("[I]n trademark infringement cases, the injury requirement [of  New York long- arm statute C.P.L.R. § 302(a)] is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet

---

[3] The Court assumes without deciding that the Delaneys could be liable for trademark infringement for their activities related to the seven Connecticut sales, including physically owning the product, arranging it to conform to the allegedly infringing design appearing on the 1-800-Flowers' website, and delivering it, even though the bouquets were not purchased through the Delaneys' website and the design may have been created by 1-800-Flowers.  Even if the Delaneys' activities related to the Connecticut sales infringed plaintiffs' trademark and produced an in-state injury, the Court finds the connection between the Delaneys and Connecticut too attenuated to warrant exercising jurisdiction.

users in [the state].")[4]; *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000) ("Injury within the state [under C.P.L.R. § 302(a)] includes harm to a business in the [state's] market in the form of lost sales or customers," which can be established by a "claim that . . . actual and potential customers in [the state] are confused or deceived when they view and interact with . . . web sites.") (citations omitted).

But EA has failed to satisfy the other requirements for long-arm jurisdiction. Section 52-59b(a)(3)(A) requires a showing that the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state." Conn. Gen. Stat. § 52-59b(a)(3). The analogous New York provision "necessitates some *ongoing* activity." *Ingraham v. Carroll*, 687 N.E.2d 1293, 1295 (N.Y. 1997) (emphasis added). The fact that the Delaneys operated www.fruitboquetstatenisland.com and fulfilled seven orders placed by Connecticut residents through the 1-800 Flowers website over the course of two years does not, on its own, reasonably permit the conclusion that the Delaneys were engaged in regular business in Connecticut, or that they derived substantial revenue from Connecticut.

There is no evidence that the Delaneys, who own a single-shop business in Staten Island and operated the Staten Island-branded website, www.fruitboquet*statenisland*.com, have solicited business outside of Staten Island. The mere accessibility of a website to Connecticut residents is not enough to demonstrate regular solicitation of business, even if the website has some interactive features. *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 220 (2d Cir. 2004) ("[T]he mere fact that the Steirs' website, which invites only limited interactive content, is continuously accessible to New York residents does not establish the sort of persistent course of

---

[4] Because "in enacting §52-59b, the legislature used New York Civil Practice Law § 302 (McKinney 1980-81 Supp.) as a model," Connecticut courts "find pertinent the judicial interpretation given to that New York statute." *Zartolas v. Nisenfeld*, 440 A.2d 179, 180-81 (Conn. 1981).

conduct in the state fairly to require the Steirs to answer in New York for their out-of-state actions in maintaining the website."); *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 CIV. 6153 RA, 2014 WL 496875, at *7, 12 (S.D.N.Y. Feb. 5, 2014) (holding that even where "Defendant's website offers users the opportunity to donate, and . . . several individuals from New York have in fact donated through the website," the fact "[t]hat individuals in New York can continuously access—and, in a limited way, interact with—Defendant's website is insufficient to establish § 302(a)(3)(i) jurisdiction"); *Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000) ("The plaintiff alleges that CPLR § 302(a)(3)(i) is satisfied due to the constant presence of the defendant's website, which allows a user to easily order the defendant's services. However, as discussed earlier, the mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction."); *but see Lis v. Delvecchio*, No. 3:11CV01057 AWT, 2012 WL 3309384, at *4 (D. Conn. Aug. 13, 2012) ("In light of the plaintiffs' showing that Palms operates an interactive website whereby Connecticut residents may purchase hotel accommodations and tickets from their home computers, the court finds that the plaintiffs have shown that Palms regularly does or solicits business within the state under § 52-59b(a)(3)(A).").

EA relies on *Lis* to argue that evidence of a website's interactivity is alone sufficient to establish regularly doing or soliciting business. The Second Circuit has noted, however, that such interactivity is relevant only to the "transacting business" prong of the long-arm statute, a distinct prong on which EA does not rely. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007)("[A] website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York—that is, whether the defendant, through the website, 'purposefully

avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'); *compare* Conn. Gen. Stat. § 52-59b(a)(1) ("Transacts any business within the state") *with* § 52-59b(a)(3) ("commits a tortious act outside the state causing injury to … within the state …."); *see also Richtone Design Grp., LLC v. Live Art, Inc.,* No. 12 CIV. 7652 JFK, 2013 WL 5904975, at *7 (S.D.N.Y. Nov. 4, 2013) ("Even if it is true that the newsletter constitutes an interactive website…the 'spectrum of interactivity' test invoked by Plaintiff is relevant only as to the 'transacts business' prong of § 302(a)(1)—not, as Plaintiff contends, to the ['regularly does or solicits business' prong of the] § 302(a)(3) analysis.")

Plaintiffs have made no allegations that any Connecticut residents placed orders through or otherwise used, accessed, or knew of the *Delaneys'* website; as noted, the only evidence of Connecticut orders were the seven placed through the 1-800 Flowers website, which the Delaneys fulfilled – under their arrangement with BloomNet – by delivering product from their inventory in Staten Island to New York addresses.  *See A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 572-73 (E.D.N.Y. 2011) (finding allegedly infringing website did not constitute regular conduct of business in New York when no orders were placed in New York and "the [d]efendant has explicitly denied that it has even a single customer in New York State").  It would be a stretch to call the seven residents whose orders were fulfilled by the Delaneys their "customers," as there is no suggestion that any of those seven accessed the Delaneys' website or even knew of the existence of their store when they made the purchases, let alone a suggestion that the Delaneys solicited their business or otherwise targeted the Connecticut market.  *See Richtone*, 2013 WL 5904975, at *7 ("Even if it is true that the newsletter constitutes an interactive website… [and] the spectrum test did apply to §302(a)(3) as a technical matter, nothing about the [defendant's website] evinces an intent to target New

8

York." ) Furthermore, the seven orders fulfilled through the Delaneys' relationship with
BloomNet resulted in a total of $267.12 over the course of two years, an amount that hardly
qualifies as "substantial revenue."  *See DH Servs.*, 2014 WL 496875, at *12 ("only a small
portion -- about two percent or less -- of Defendant's donations and total funding comes from
New York-based individuals and entities. These funds do not amount to 'substantial revenue.'").

      The Court finds that EA has failed to establish a prima facie case that the Delaneys
regularly solicit business or derive substantial revenue from Connecticut, which precludes this
Court from asserting jurisdiction under Section 52-59b(a)(3)(A).  Interpreting the statute more
broadly to bring within this Court's reach the Delaneys – proprietors of a Staten Island store not
alleged to have done anything to target the Connecticut market –would raise constitutional
concerns.  *See  BE2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011) ("Beyond simply
operating an interactive website that is accessible from the forum state, a defendant must in some
way target the forum state's market. If the defendant merely operates a website, even a 'highly
interactive' website, that is accessible from, but does not target, the forum state, then the
defendant may not be haled into court in that state without offending the Constitution.")
(citations omitted); *Divicino v. Polaris Indus.*, 129 F. Supp. 2d 425, 433 (D. Conn. 2001)
("Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or
even worldwide—but, without more, it is not an act purposefully directed towards the forum
state. Instead, there must be additional evidence of purposeful availment, such as evidence
showing that Connecticut users accessed the site, that they purchased products based on the web
site advertisement, or that the web site advertisement was directed at Connecticut more so than
anyplace else in the nation.") (quotation marks omitted); *see generally Clark v. Martinez*, 543
U.S. 371, 380-81 (2005) ("[W]hen deciding which of two plausible statutory constructions to

adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail ….").

EA also fails to make a prima face case for jurisdiction under Section 52-59b(a)(3)(B), in that it has failed to show that the Delaneys "derive substantial revenue from interstate or international commerce." "[T]he 12th Annual Report of New York Judicial Conference described the interstate commerce prong . . . as requiring a showing that defendant was 'engaged in *extensive* business activities on an interstate or international level.'" *Ingraham v. Carroll*, 687 N.E.2d 1293, 1296 (N.Y. 1997) (emphasis in original). This requirement for jurisdiction, "simply put[,] . . . is a bigness requirement, the purpose of which is to ensure that the defendant is economically big enough to defend suit in [the state]." *Roberts-Gordon, LLC v. Superior Radiant Products, Ltd.*, 85 F. Supp. 2d 202, 216 (W.D.N.Y. 2000) (quotation marks omitted). It "is intended to exclude non-domiciliaries whose business operations are of a local character." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997).

There are no allegations that, if proven, would demonstrate that the Delaneys' business is anything other than predominantly local in character, with occasional fulfillment of out-of-state orders—which falls short of "extensive business activities on an interstate or international level." *Ingraham*, 687 N.E.2d at 1296. EA's argument that the "Delaneys intentionally reached an audience outside of New York," Pls.' Resp. at 13, rests entirely on a page of the Delaneys' website that encouraged viewers to "select the truly perfect gift for any day of the week for . . . friends and family *everywhere*," Exh. C to Pls.' Resp. (emphasis added). But EA presents no further evidence that would support interpreting the word "everywhere" as anything other than a colloquial marketing phrase—the geographic limitations of which are revealed by other language on  the same page stating that "in addition to local flower delivery in Staten Island, NY," the

shop also provides "fruit bouquet services to the following *nearby* communities." *Id.*(emphasis added).  No such communities are actually listed on the version of the page provided to the Court. *Id.* Therefore, this Court finds that EA has not made a prima facie case for jurisdiction over the Delaneys under Section 52-59b(a)(3)(B).

Because the sections of Connecticut's long-arm statute invoked by EA provide no grounds for jurisdiction over the Delaneys, the Court need not address due process considerations.

**V.      Conclusion**

For the reasons above, the Delaneys' Motion to Dismiss for lack of jurisdiction is GRANTED and they are dismissed from this lawsuit.


**SO ORDERED** this 30th day of July, 2015, at Hartford, Connecticut.


                                        _____/s/_____
                                        Michael P. Shea
                                        United States District Judge